**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

ANWAR ALKHATIB,

                Plaintiff,

v.

NEW YORK MOTOR GROUP LLC, et al.,

                Defendants.

                **13-CV-02337(ARR)(SMG)**

-------------------------------------------------------------

SHAHADAT TUHIN,

                Plaintiff

v.

NEW YORK MOTOR GROUP LLC, et al.,

                Defendants.

                **13-CV-5643(ARR)(SMG)**

-------------------------------------------------------------

BORIS FREIRE and MIRIAM OSORIO,

                Plaintiffs,

v.

NEW YORK MOTOR GROUP LLC, et al.,

                Defendants.

                **13-CV-7291(ARR)(SMG)**

-------------------------------------------------------------

SIMON GABRYS,

                Plaintiff,

v.

NEW YORK MOTOR GROUP LLC, et al.,

                Defendants.

                **13-CV-7290 (ARR)(SMG)**

-------------------------------------------------------------

ZHENGHUI DONG ,

                Plaintiff,

v.

NEW YORK MOTOR GROUP LLC, et al.,

                Defendants.

                **14-CV-2980(ARR)(SMG)**

-------------------------------------------------------------

NASRIN CHOWDHURY,

                Plaintiff,

v.

NEW YORK MOTOR GROUP LLC, et al.,

                Defendants.

                **14-CV-2981(ARR)(SMG)**

-------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND THE COMPLAINTS

| SCHLANGER & SCHLANGER, LLP | LAW OFFICES OF AHMAD KESHAVARZ | MFY LEGAL SERVICES, INC. |
|---|---|---|
| 9 East 40th Street, Suite 1300 | 16 Court Street, 26th Floor | 299 Broadway, 4th Floor |
| New York, New York 10016 | Brooklyn, New York 11241 | New York, New York 10013 |
| (914) 946-1981 | (718) 522-7900 | (212) 417-3700 |

# Table of Contents

Table of Authorities ..................................................................................................ii

Preliminary Statement ...............................................................................................1

Background ...............................................................................................................1

Argument..................................................................................................................4

    A.  Legal Standard .................................................................................................4

    B.  The proposed Amended Complaints Meet the Standard Under Rule 15 (a) ..........4

        1.  Plaintiffs Timely Moved to Amend .................................................................5

        2.  Defendants Have Not Been Unduly Prejudiced ..................................................6

        3.  The Proposed Amendments are Meritorious ...........................................................7

            a.  Rico Claim against NYMG and M&T/SCUSA .................................................8

                i.      Plaintiffs Plausibly Plead Defendants Knowing participation in the Scheme ..............................................................................................11

                ii.     Plaintiffs Plausibly Plead Wire and Mail Fraud as Proximate Cause Of Injury ..............................................................................................13

                iii.    Plaintiffs Plausibly Plead Continuity under RICO ............................15

                iv.    Plaintiffs Pleadings Satisfy Rule 9(b) Standards ..................................17

            b.  RICO Claim against Mamdoh Eltouby, Nada Eltouby and Julio Estrada  18

            c.  Direct Liability of M&T Bank and SCUSA for Violating NYGBL § 349 ..19

            d.  NY Usury Law Claim against NYMG and M&T Bank ..................................22

            e.  Negligent Hiring Claim against NYMG and Mamdoh Eltouby ..................23

            f.  Amend Defendant M&T Bank's Name .............................................................24

            g.  Alternative Negligence Claim Against M&T Bank in Tuhin.................24

Conclusion ...............................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) .................................................................7

*Banks v. Consumer Home Mortgage, Inc.*, 01-CV-8508 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) ........................................................................................................................25

*Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 469–70 (2d Cir.1995) .....................................28

*Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993) ..........................................................9

*Chanayl v. Gulati*, 169 F.3d 168, 170-171 (2d Cir. 1999) ................................................................12

*Chera v. Chera*, 2000 U.S. Dist. LEXIS 13749 (EDNY 2000) ........................................................17

*Cofacredit*, 187 F.3d at 242 ...............................................................................................................1

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) ...................18

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-26 (1995) ...........................................................................................23

*Connecticut National Bank v. Fluor Corp*, 808 F.2d 957, 962 (2d Cir. 1987) ................................20

*DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) .....................................................................11

*Dewitt v. Home Depot U.S.A.*, Inc., 10-CV-3319 KAM, 2012 WL 4049805 (E.D.N.Y. Sept. 12, 2012) .........................................................................................................................................27

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 753 F.3d 395, 416 (2d Cir. 2014) ..........10

*Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-173 (2d Cir. 1999) ..............................................20

*Moustakis v. Christie's, Inc.*, 68 A.D.3d 637, 637-638 (App. Div. 1st Dept. 2009); *see also Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 83 F. Supp. 605, 608 (E.D.N.Y. 1993); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988) ...............23

*Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 27 .........................................................23

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) .........................................................................11

*Salinas v. United States*, 522 U.S. 52, 62 (1997) ............................................................................11

*Sedima, SPRL v. Imrex Co., Inc.*, 473 U.S. 479, 497 ......................................................................16

*Sheila C. v. Povich*, 11 A.D.3d 120, 129, 781 N.Y.S.2d 342, 350 (App. Div. 1st Dep't 2004) .....27

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y.2007)..9

*United States v. Boyer*, 694 F.2d 58, 60 (3d Cir. 1982); *United States v. Frick*, 588 F.2d 531, 536 (5th Cir. 1979); *United States v. Dick*, 744 F.2d 546, 551 (7th Cir. 1984); *United States v. Henderson*, 446 F.2d 960, 966 (8th Cir. 1971); *United States v. Schaflander*, 719 F.2d 1024, 1027 (9th Cir. 1983); *United States v. Themy*, 624 F.2d 963, 965 (10th Cir. 1980) .....................12

*United States v. Precision Medical Labs.*, 593 F.2d 434, 443-44 (2d Cir. 1978); *United States v. Hanlon*, 548 F.2d 1096, 1101 (2d Cir. 1977)...................................................................12

*United States v. Zichettello*, 208 F.3d 71, 100 (2d Cir. 2000) ..................................................12

*Vaughn v. Consumer Home Mortgage, Inc.*, 01-CV-7937(ILG), 2003 WL 21241669 (E.D.N.Y. Mar. 23, 2003)..........................................................................................................25

*Vicon Fiber Optics v. Scrivo*, 201 F. Supp. 2d 216 (S.D.N.Y. 2002) ........................................17

*Watral v. Silvernails Farm, LLC*, 51 Fed. Appx. 62 (2d Cir. 2002) (citing *Cofacredit*, 187 F.3d 229); *Sky Med. Supply, Inc. v. SCS Support Claims Servs.*, 2014 U.S. Dist. LEXIS 63242, *44 (E.D.N.Y. 2014) ......................................................................................................19

*Zurakov v Register.Com, Inc.*, 304 A.D.2d 176, 760 N.Y.S.2d 13 (App. Div. 1st Dept 2003) ......24

**Statutes**

§ 1961 ................................................................................................................................12

§ 1962 ................................................................................................................................11

§ 1962(a), (b), or (c)...........................................................................................................12

§ 1962(c) and (d) ...............................................................................................................13

§§ 1341 and 1343 ..............................................................................................................18

§§ 1341 or 1343 .................................................................................................................12

18 U.S.C §§ 1341 and 1343 ...............................................................................................13

18 U.S.C. § 1961, *et seq*...................................................................................................5

18 U.S.C. § 1962 ...............................................................................................................11

18 U.S.C. §§ 1341, 1343 ....................................................................................................12

18 U.S.C. §§ 1341 and 143 .......................................................................................................... 12

1962 ........................................................................................................................................ 11, 12

1962(d) ....................................................................................................................................... 11

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 3

Fed.R.Civ.P. 15(c)(3) ................................................................................................................ 28

Federal Rule of Civil Procedure 15(a)(2) ................................................................................... 7

FTC Holder Rule16 C.F.R. § 433; NY Pers. Prop. Law § 302(9) ............................................ 26

GBL § 349 ................................................................................................................................ 6, 9

General Obligations Law § 5-501 ................................................................................................ 6

Local Rule 50.3.1 ......................................................................................................................... 4

NY General Obligations Law § 5-501 ....................................................................................... 25

NYGBL § 349 ............................................................................................................... 5, 6, 23, 25

Rule 12(b)(6) ............................................................................................................................. 10

Rule 9(b) .................................................................................................................................... 20

*Shiah Yih Industries Co., Ltd. v. Sitco Importing Co., Inc.*, 1997 WL 304903 at *4 (S.D.N.Y. 1997) ..................................................................................................................................... 10

Truth In Lending Act ("TILA"), 15 USC § 1601, *et seq* ............................................................ 4

## PRELIMINARY STATEMENT

Plaintiffs in the above-captioned, related cases submit this memorandum of law in support of their motions pursuant to Fed. R. Civ. P. 15(a)(2) for leave to amend their complaints. The proposed Amended Complaints ("ACs") are attached as exhibits to the concurrently filed Declarations of Peter T. Lane, Esq. and Carolyn E. Coffey, Esq. and are incorporated by reference. Pursuant to the Court's Order of June 25, 2014, the proposed ACs have been refined in order to address the issues raised in Defendants' pre-motion letters.

## BACKGROUND

The above-captioned cases are all brought by consumers against the used car dealerships New York Motor Group LLC ("NYMG") and Planet Motor Cars, Inc.[1] (collectively, "Dealerships"); their owner, Mamdoh Eltouby and employees Nada Eltouby and Julio Estrada (together with Dealerships, "Dealership Defendants"); and the respective financing institutions, M&T Bank Corporation ("M&T Bank"), Santander Consumer USA ("SCUSA") and Capital One Auto Finance Inc. ("COAF").[2] Plaintiffs allege that the Dealerships fraudulently induced them to incur automobile loan obligations grossly exceeding the advertised and agreed-upon prices by misrepresenting the financing terms and requiring bogus add-on products. They then assigned these loans to finance institutions, pocketing the difference. Each case asserts, among others, claims under the Truth In Lending Act ("TILA"), 15 USC § 1601, *et seq.*; claims under the NY General Business Law ("NYGBL") §§ 349 and 350; and related common law claims of fraud and breach of contract.[3]

---

[1] Planet Motor Cars, Inc. is not named as a Defendant in *Tuhin*.

[2] COAF is the assignee of Mr. Alkhatib's loan; COAF and that Plaintiff have agreed to a settlement in principle but have not yet finalized the settlement terms or consummated any settlement. M&T Bank is the assignee of Mr. Tuhin's, Mr. Gabrys's, and Ms. Chowdhury's loans. SCUSA is the assignee of Mr. Freire's loan and of a purported loan created through theft and forgery in Ms. Dong's case.

[3] In addition, Mr. Tuhin asserts claims under the Magnuson-Moss Warranty Act, the NY Uniform Commercial Code, for assault, and for battery. Mr. Alkhatib, Mr. Gabrys, Mr. Freire and Ms. Osorio, Ms. Dong, and Ms.

Anwar Alkhatib commenced the first action in this series of related cases on April 18, 2013. Shahadat Tuhin filed a Complaint on October 11, 2013, and Boris Freire and Miriam Osorio, jointly, and Simon Gabrys filed their Complaints simultaneously on December 23, 2013. On April 10, 2014, the Court deemed these cases related under Local Rule 50.3.1. On May 12, 2014, Zhenghui Dong and Nasrin Chowdhury filed their Complaints, and the Court deemed all six cases related and placed them on the same pretrial schedule.

The nature of the fraudulent and criminal scheme alleged in the Complaints has created a dynamic situation where new victims continue to emerge claiming markedly similar experiences. As each new victim comes forward, the pervasive nature of the Dealership Defendants' fraudulent activity, and the unfair, abusive, and deceptive actions of M&T and SCUSA in financing these transaction and collecting on the loans, become clearer.

As alleged in the proposed Amended Complaints, M&T and SCUSA have participated in the fraudulent scheme by accepting assignment of retail installment contracts and collecting on the fraudulently induced loans, with actual knowledge or in deliberate disregard of the frauds perpetrated against the consumers. In fact, when consumers like the Plaintiffs complain to M&T Bank and SCUSA that the assigned loans are illegal, the banks tell them nothing can be done—even when the transaction has not yet been financed. They do not meaningfully investigate, although sometimes they say they will. Instead, they continue to demand full payments under the terms of the fraudulent loan documents. Accordingly, in addition to vicarious liability for the Dealerships' misconduct, Mr. Tuhin asserted claims of direct liability against M&T Bank under NYGBL § 349 and for fraud, and, in the alternative, negligence. And related-plaintiffs Ms.

---

Chowdhury assert claims under the Racketeering Influenced and Corrupt Organizations Act, under the NY Motor Vehicle Retail Instalment Sales Act, under NY Usury Law, for rescission/mistake, and for negligent hiring, retention, and training. Ms. Dong additionally asserts a claim for conversion. Ms. Chowdhury does not assert a claim under TILA.

Dong and Ms. Chowdhury, in their extant Complaints, assert claims of direct liability against SCUSA and M&T Bank, respectively, under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., and NYGBL § 349.

In light of recently discovered information from all related-plaintiffs and party-disclosures, Mr. Tuhin, Mr. Gabrys and Mr. Freire and Ms. Osorio move to amend their Complaints to bring the claims asserted in all related cases into conformity, to the extent permitted by the individual facts. And Mr. Alkhatib, moves to amend his Complaint to refine the RICO claim already asserted against the Dealership Defendants only and bring it into conformity with all other related Complaints. Moreover, Ms. Dong and Ms. Chowdhury move to further amend their Complaints to bring all related-Complaints into conformity and to address the issues raised by Defendants in the pre-motion responses. The Alkhatib, Dong, and Chowdhury Proposed Second Amended Complaints, however, do not add any new claims.

Specifically, Mr. Tuhin seeks to amend his Complaint (1) to add a claim under RICO against NYMG and M&T Bank; (2) to add a claim under RICO against Mamdoh Eltouby, Nada Eltouby and Julio Estrada; (3) to add a claim under NY Usury Law, General Obligations Law § 5-501, against NYMG and M&T Bank; (4) to add a pendent common law claim for Negligent Hiring, Retention, Training, and Supervision against NYMG and Mamdoh Eltouby; (5) to clarify his claims of direct liability against M&T Bank under NYGBL § 349 and common law fraud; (6) to add newly discovered factual allegations; (7) to rename the entity incorrectly sued as M&T Bank Corporation as Manufacturers and Traders Trust Company; and (8) to name certain previously unidentified Doe Defendants.[4]

---

[4] Mr. Tuhin seeks to name the Defendants identified as John and Jane Doe whose legal names are now known. Specifically, the Jane Doe identified as "Nada" is now known to be Nada Eltouby—a management-level employee of NYMG; and the John Doe identified as "John"/"Jay"/"Julio" is now known to be Julio Estrada—the finance manager who, since the filing of this case, pleaded guilty to automobile-related fraud charges, was sentenced to

Mr. Gabrys and Mr. Freire and Ms. Osorio seek to amend their Complaints (1) to add a claim under RICO against NYMG and Planet and, respectively, M&T Bank and SCUSA; (2) to replead their claims under RICO against Mamdoh Eltouby, Nada Eltouby and Julio Estrada; (3) to assert direct liability against M&T Bank and SCUSA, respectively, under GBL § 349; and (4) to add newly discovered factual allegations.  Mr. Gabrys and Ms. Chowdhury additionally seek to rename the entity incorrectly sued as M&T Bank Corporation as Manufacturers and Traders Trust Company.

Finally, Plaintiffs Alkhatib, Dong and Chowdury seek to amend their Complaint (1) to refine and conform existing RICO and NYGBL claims and (2) to add newly discovered factual allegations.

## ARGUMENT

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  Leave to amend is liberally granted and may properly be denied only for "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.  The Proposed Amended Complaints Meet the Standard Under Rule 15(a)

Since filing the related cases, counsel have discovered that the misconduct alleged is part of a widespread and concerted pattern of fraudulent activity by the Dealership Defendants and financing institutions, M&T Bank and SCUSA.  Specifically, the cases collectively reveal that

---

probation, and then was rearrested for continuing to defraud consumers.  Defendants have not yet disclosed the legal names of the remaining Doe Defendants.

M&T Bank and SCUSA participated in the Dealership Defendants' scheme to fraudulently obligate consumers to automobile loans with larger payments than advertised or agreed, and by facilitating and profiting off these loans with actual knowledge or deliberate disregard of their fraudulent nature.  M&T Bank and SCUSA's participation consisted of rubber stamping financing applications despite indicia of fraud, failing to investigate consumer complaints about fraud, deceiving consumers about their available remedies, and funding and demanding payments on these loans after being directly notified that they were fraudulently induced.  Other new developments (including discussions with other victims and the continued criminal prosecution of NYMG's finance manager and co-defendant Julio Estrada) have revealed the extent of the scheme at the heart of this case.  Accordingly, Plaintiffs seek to amend their Complaints to assert new claims, refine already pled claims, and add factual allegations.

The proposed Amended Complaints meet the standard under Rule 15(a).  Plaintiffs moved to amend immediately after the six cases were deemed related, and, as noted, any new claims have already been pled in related-cases *Dong* and *Chowdhury*.  Furthermore, the cases are in the early stages of litigation, where document production is underway and no depositions have been conducted. Finally, the proposed claims are meritorious and supported by facts already pled or recently discovered in the course of preliminary document exchange and relating the cases.

### 1.  Plaintiffs Timely Moved to Amend

The proposed Amended Complaints present no issue of "undue delay, bad faith, or dilatory motive."  The impetus for these amendments is the Court's April 10, 2014 decision to deem the cases related.  Because all cases are now proceeding on the same schedule, before the same Judges, and with omnibus filings where appropriate, Plaintiffs desire to promote judicial economy by avoiding needless variation among the operative complaints.

In addition, the discovery that several consumers have had the same experiences when notifying the finance companies of the dealership's fraudulent conduct provided the factual basis for the RICO claims and new claims of direct liability against M&T Bank and SCUSA. Plaintiffs then acted quickly in apprising the Defendants of their intention to amend and the nature of the new amendments.  At the first status conference following the reassignment of these cases—just one month later, on May 12, 2014—Defendants were provided copies of the Complaints in *Dong* and *Chowdhury*, which set forth all claims now sought to be added in the other cases, and notified of Plaintiff's intentions to amend in conformity.  Accordingly, the amending Plaintiffs have not unduly delayed or exhibited any bad faith or dilatory motive.

### 2.  Defendants Have Not Been Unduly Prejudiced

Similarly, there is no undue prejudice to Defendants should the Court allow the proposed amendments.  In assessing the likelihood of prejudice, the court should consider whether the proposed amendment will "(i) require the opponent to expand significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).  Any prejudice demonstrated "must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y.2007) (internal quotation omitted).

None of these factors has been met here, and Defendants have not otherwise been prejudiced.  They have suffered no surprise because the proposed amendments all arise from facts alleged in the original Complaints and information contained in documents produced by, and already known to, Defendants (including the date M&T Bank wired NYMG the funding for

Mr. Tuhin's loan).  Likewise, the new factual allegations serve to further define the claims

Plaintiffs already will seek to prove at trial and, therefore, facilitate their litigation by all parties.

Additionally, although discovery has commenced, it is ongoing and no depositions have

taken place yet.  Moreover, the proposed amendments do not expand the scope of permissible

discovery.  Mr. Tuhin has already asserted claims of direct liability for fraud and violating GBL

§ 349 against M&T Bank, and Ms. Dong and Ms. Chowdhury have asserted RICO and GBL

claims against M&T Bank and SCUSA.  All related Plaintiffs, besides Mr. Tuhin, have asserted

claims under RICO (against the dealership Defendants), under NY Usury Law, and for negligent

hiring.  Accordingly, Plaintiffs are already entitled to the information they would need to prove

the elements of the proposed claims.  In addition, all material discovery should be in Defendants'

possession and easily accessible.

Finally, the Court has deemed these cases related in order to preserve efficiency in their

adjudication.  Accordingly, allowing these amendments to bring the claims, theories, and

allegations in each case into conformity would further the interest of judicial economy.

### 3.  The Proposed Amendments are Meritorious

Permitting these amendments would not be futile for two reasons:  First, they will be

litigated in any event.  That is, all new claims have already been pled in the operative Complaints

in *Dong* and *Chowdhury*, and the RICO claims against Mr. Eltouby, Ms. Eltouby and Mr.

Estrada, the Usury Law claim, and the negligent hiring claim that Mr. Tuhin seeks to add have

additionally been pled in all other related Complaints.

Second, the proposed claims are meritorious.  In determining whether a proposed

amendment would be futile, "plaintiff must merely show that it has 'at least colorable grounds

for relief.'" *Shiah Yih Industries Co., Ltd. v. Sitco Importing Co., Inc.*, 1997 WL 304903 at *4

(S.D.N.Y. 1997) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*,

748 F.2d 774, 783 (2d Cir. 1984)).  Moreover, complaints stating plausible claims for relief

under Rule 12(b)(6) are not futile.  *See Lotes Co., Ltd. v. Hon Hai Precision Industry Co.,*

*Ltd.*, 753 F.3d 395, 416 (2d Cir. 2014).

### a.  RICO Claim against NYMG and M&T/SCUSA

Based on information that has come to light through investigation and initial discovery

Mr. Tuhin and Mr. Gabrys seek to add a RICO claim against NYMG and M&T Bank, Ms.

Osorio and Mr. Freire seek to add a RICO claim against NYMG, Planet and SCUSA, and Mr.

Alkhatib, Ms. Dong, and Ms. Chowdhury seek to refine their extant RICO claims.

Plaintiffs allege that these Defendants formed separate enterprises, each one being an

association in fact with the common purpose of profiting by placing consumers into automobile

loans that obligate them to larger payments than advertised or agreed to, assigning these loans,

and extracting payments with actual knowledge or deliberate disregard of their fraudulent

nature.[5]  These Defendants engage in the collection of unlawful debts and in a pattern of

racketeering activity through the use of wire and mail fraud.  And Plaintiffs suffered financial

injury as a result of that racketeering activity.

The proposed amendments satisfy the broad standard of showing "at least colorable

grounds for relief."  In order to state a claim for civil violations of RICO, a plaintiff must allege

(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and

(3) that the injury was caused by the violation § 1962*." DeFalco v. Bernas*, 244 F.3d 286, 305

(2d Cir. 2001).  Furthermore, to state a claim under § 1962(c), a plaintiff must plead three

---

[5] Plaintiffs do not allege that M&T and SCUSA were part of the same enterprise with the Dealerships. Instead, as can be seen in the individual complaints, M&T and the Dealerships are alleged to have formed an enterprise in *Gabrys*, *Tuhin*, and *Chowdhury*, and SCUSA and the Dealerships are alleged to have formed a separate enterprise in *Freire* and *Dong*.  For the sake of simplicity, Plaintiffs refer to the enterprise in the singular as the issues at play are identical for each alleged enterprise.

principal elements: "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997).

A defendant is liable under RICO § 1962(c) where it has "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). And a defendant is found to "participate" in the enterprise where it plays "some part in directing the enterprise's affairs," but need not have primary responsibility for those affairs. *Id.* at 179. Moreover, a Defendant violates 1962(d) by agreeing to further facilitate a violation of § 1962(a), (b), or (c). *Salinas*, 522 U.S. at 65. Liability under 1962(d) only requires that a defendant "possessed knowledge of the general contours of the conspiracy." *United States v. Zichettello*, 208 F.3d 71, 100 (2d Cir. 2000). That a defendant "was aware of the general nature of the conspiracy and that the conspiracy extended beyond the defendant's individual role" is sufficient. *Id.* Moreover, it is not required to show even that the defendant himself agreed to commit any predicate act. *Salinas*, 522 U.S. at 65. Thus, a defendant may conspire to facilitate the violation of 1962(c) so long as he knew that the predicate acts were being committed.

A pattern of racketeering activity consists of two predicate acts of racketeering activity within a 10-year period. § 1961(5). For purpose of RICO, predicate acts include the specifically enumerated crimes of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 143. Mail and wire fraud has three elements:

> (1) the existence of a scheme to defraud,
> (2) the defendant's knowing participation in the scheme, and
> (3) the use of wire[ or] mail. . . communications in interstate commerce in furtherance of the scheme.

*Chanayl v. Gulati*, 169 F.3d 168, 170-171 (2d Cir. 1999); *see* 18 U.S.C. §§ 1341, 1343.

In the Second Circuit, a "deliberate disregard" of the truth satisfies the scienter requirement of knowing participation in the scheme to defraud. *See United States v. Precision*

*Medical Labs.*, 593 F.2d 434, 443-44 (2d Cir. 1978); *United States v. Hanlon*, 548 F.2d 1096, 1101 (2d Cir. 1977). This holding is in line with several other circuits, which find that a reckless disregard of the truth is sufficient to find "knowledge" under §§ 1341 or 1343. *See United States v. Boyer*, 694 F.2d 58, 60 (3d Cir. 1982); *United States v. Frick*, 588 F.2d 531, 536 (5th Cir. 1979); *United States v. Dick*, 744 F.2d 546, 551 (7th Cir. 1984); *United States v. Henderson*, 446 F.2d 960, 966 (8th Cir. 1971); *United States v. Schaflander*, 719 F.2d 1024, 1027 (9th Cir. 1983); *United States v. Themy*, 624 F.2d 963, 965 (10th Cir. 1980).

Here, Plaintiffs have stated claims for violations of § 1962(c) and (d) by alleging that the Dealerships and M&T and SCUSA, respectively, have participated in a fraudulent enterprise, the purpose of which is to induce consumers to incur larger loan obligations than advertised or agreed to by using fraudulent means, such as false promises of refinancing or pay off, requiring unnecessary or bogus products, and identity theft, in order to profit Dealerships and M&T and SCUSA through the assignment and enforcement of these loans, "in deliberate disregard or even with actual knowledge of any fraud or illegal activity."(Proposed Amended Complaints ("AC"): *Gabrys* ¶¶ 3 and 149, *Freire* ¶¶ 3 and 145, *Tuhin* ¶¶ 3 and 87, Dong ¶¶ 3 and 141, Chowdhury ¶¶ 3 and 151.) Plaintiffs further allege that in order to achieve the fraudulent purpose of this enterprise—obtaining larger payments than legally permissible—each of the participating defendants committed at least two predicate acts: the use of wire and mail communications in interstate commerce in violation of 18 U.S.C §§ 1341 and 1343. (AC: *Gabrys* ¶ 151, *Freire* ¶ 147, *Tuhin* ¶ 109, *Dong* ¶ 142, *Chowdhury* ¶ 152.)

Defendants M&T and SCUSA suggest that Plaintiffs' proposed amended pleadings are futile because they fail to state plausible claims under RICO. The gravamen of Defendants' objections is that Plaintiffs have failed to allege anything other than the fact that each finance

10

company funded and demanded payments on fraudulently induced loans in the legitimate course of their business. *See* M&T Letter Opposition (*Tuhin* ECF Doc. No. 38 at 2 ("M&T and the dealership were involved in numerous auto-financing deals and there are only three claims used to support the alleged RICO violations."); SCUSA Letter Opposition (*Freire* ECF Doc. No. 25 at 2 ("In sum, plaintiffs contend that by virtue of engaging in the very activities that form the basis of its routine and lawful business . . . ."). But the proposed Amended Complaints allege that M&T and SCUSA funded and demanded payments on these loans *despite actually knowing or deliberately disregarding the fact that they were fraudulently induced*. (AC: *Gabrys* ¶¶ 3, 155(k), *Freire* ¶¶ 3, 151 (j)-(l), and *Tuhin* ¶¶ 3, 97, 103, 111, Dong ¶¶ 3, 147(l)-(n), Chowdhury ¶¶ 3, 157(k).) This allegation, if true, does not describe the routine, lawful business of a finance institution. It describes a fraudulent scheme.

> **i.    Plaintiffs Plausibly Plead Defendants' Knowing Participation in the Scheme**

Defendants also suggest that Plaintiffs have not stated a plausible claim that SCUSA or M&T knowingly participated in a scheme to use the wires and mail to defraud consumers. Again, Defendants mischaracterize the allegations. Plaintiffs have alleged that M&T and SCUSA actually knew or deliberately disregarded the fact that the loans were the result of fraud, and used wire and mail to fund and demand payment on the loans notwithstanding.

As to knowing participation, Mr. Tuhin alleges that M&T Bank refused to investigate his fraud complaint, told him his only recourse was to contact the State Attorney General, and then provided the funding for the loan two days *after* he had told them it was fraudulently procured. (AC: *Tuhin* ¶¶ 43, 44, 48.) M&T Bank continues to demand payments and has reported the account as past due. (AC: *Tuhin* ¶¶ 69, 72.) Ms. Chowdhury and Mr. Gabrys similarly allege that M&T Bank failed to meaningfully investigate their fraud complaints, said they could not do anything to alter the loans, and continue to demand full payment under the terms. (AC: *Gabrys* ¶

155 (i)-(j); *Chowdhury* ¶ 157(i).) Similarly, SCUSA repossessed the vehicles of Zhenghui Dong and Feng Zhong Chen after they each separately told SCUSA that they had paid for the vehicles in full. And each of those repossessions took place after the commencement of the *Freire* litigation. And it is further alleged that SCUSA failed to meaningfully investigate Ms. Dong's report of fraud and identity theft before repossession, despite knowing that it took assignment of forged contract. (AC *Dong* ¶ 147(i) and (k).) Mr. Freire continues to struggle to meet SCUSA's demands for full payment on his loan, notwithstanding complaints of the Dealerships' criminal activity. (AC *Freire* at ¶¶ 164, 195.)

These allegations show M&T Bank and SCUSA's willingness to fund loans and enforce the terms with actual knowledge or conscious disregard of their fraudulent nature. In addition to actual notice from Plaintiffs, upon information and belief, discovery in this case will reveal that other consumers have also notified M&T Bank and SCUSA of deceptive behavior by NYMG. These allegation state plausible claims under RICO.

In addition, the Complaints allege several uses of wire and mail that are instrumental to furthering the fraudulent scheme, including:

1. On June 24, 2013 Mr. Tuhin called M&T Bank and complained of fraud by NYMG. M&T Bank told him it could not assist him and must fund any loan assigned unless there are problems with the applicant's credit rating. (AC: *Tuhin* ¶95(e).) Two days later, M&T Bank wired the funding for the fraudulent loan to NYMG.

2. On several dates between September 2013 and February 2014, SCUSA used interstate telephone calls to falsely tell Dilshod Zaripov that it would not alter his loan obligation and that SCUSA was entitled to full payments, despite Mr. Zaripov's report of fraud and theft at the Dealership. (AC: *Freire* ¶151(h); *Dong* ¶ 147(h).)

3. On several dates between December 2013 and March 2014, SCUSA used interstate telephone calls to convey to Zhenghui Dong that they would investigate her reports of fraud and identity theft when they had no intention of meaningfully doing so or of altering its demands for full payment in response. (AC: *Freire* ¶151(k); *Dong* ¶ 147(k).)

4. On October 23, 2013, M&T Bank used an interstate telephone call to convey to Simon Gabrys that it could not do anything to assist him with his reports of fraud at the dealership. (AC: *Gabrys* ¶ 155(j).)

5. On several dates in October and November 2013, M&T Bank used interstate telephone calls to falsely convey to Nasrin Chowdhury's son, Shehad Kazi, that it was conducting an investigation into his mother's reports of fraud at the Dealerships, when it had no intention of meaningfully doing so or of altering its demands for full payment in response. (AC: *Gabrys* ¶ 155(i); *Chowdhury* ¶ 157(i).)

6. On several dates between August 2013 and January 2014, SCUSA used interstate telephone calls to tell Feng Zhong Chen that it could not assist him with his reports of fraud at the Dealerships. (AC: *Freire* ¶ 155(m); *Dong* ¶ 147(m).)

7. Since at least December 2012, SCUSA and M&T Bank have demanded full payments from Plaintiffs and other consumers on loan obligations in deliberate disregard or with actual knowledge of the fact that the loan obligations were the result of fraud, by using the U.S. mail to send monthly billing statements. (AC: *Gabrys* ¶151(k); *Freire* ¶ 155(j); *Tuhin* ¶ 69; *Dong* ¶ 147(j); *Chowdhury* ¶ 157(k).)

As such, Plaintiffs have stated colorable claims that all Defendants knowingly participated in the wire and mail fraud scheme to defraud.

### ii. Plaintiffs Plausibly Plead Wire and Mail Fraud as Proximate Cause of Injury

Furthermore, notwithstanding M&T Bank's assertions to the contrary, Plaintiffs have adequately alleged that the occurrences of wire and mail fraud are the proximate cause of their injuries, *i.e.,* the loss of money due to higher-than-agreed-to payments. Under RICO, "the compensable injury necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of the acts in connection with the conduct of an enterprise." *Sedima, SPRL v. Irmex Co., Inc*., 473 U.S. 479, 497 (1985).

Here, as cited above, Plaintiffs have alleged that they have lost money through Defendants' use of the wires to convey fraudulently induced loans or outright forged loan applications, to fund those fraudulently induced loans, use of wire and mail to deceive consumers as to their options and the banks' intentions to investigate, and the use of mail to continue to demand and ultimately receive payments on those fraudulently induced loans. Accordingly,

13

Plaintiffs have alleged that their financial injuries are the direct result of the mail and wire frauds employed in furtherance of the fraudulent scheme.

M&T's reliance on *Vicon Fiber Optics v. Scrivo*, 201 F. Supp. 2d 216 (S.D.N.Y. 2002) is misplaced. In *Vicon*, shareholders brought RICO claims against allegedly faithless officers of the corporation. They complained that the officers pilfered the corporate treasury and that they used mail fraud involving the filing of allegedly false securities' forms and false proxy statements. The court determined first that securities' filings occurred after the Defendants had already pilfered the corporate accounts and that the filings, having post-dated the financial injury, could not logically be the proximate cause of the injury to those plaintiffs. Moreover, the court found that the proxy solicitations did not cause the looting of the corporate account, as that was the result of the officers' filing false expense vouchers – actions which were not alleged to and could not be predicate acts under RICO. *Id.* at 219.

M&T's additional reliance on *Chera v. Chera*, 2000 U.S. Dist. LEXIS 13749 (EDNY 2000), a wholly inapposite case involving a dispute between business partners, is even further off course. In *Chera*, the plaintiff partner complained of injury stemming, inter alia, from the defendant partner's unequal distribution of partnership funds. The alleged predicate acts involved the defendant partner's false and fraudulent statements employed to facilitate sales and loans that added to the partnership's property, thereby providing an ostensible benefit for the plaintiff. Thus, it was determined that the injury to the plaintiff partner was caused by a breach of the partnership obligations, not by alleged predicates as "[i]njuries that are neither the preconceived purpose nor the specifically intended consequence of the defendant's acts will not [sic] sustain the plaintiff's proximate cause burden." *Id.* (citing *In re Americana Express Co. Shareholder Litigation*, 39 F.3d 395, 400 (2d Cir. 1994) (internal quotes omitted)).

In contrast, here, the alleged uses of wire and mail are not after-the-fact occurrences tangential to the fraud and injury. Rather, electronically sending fraudulent loan applications, wiring the funding of those loans, and then demanding payments by mail are the very acts that have deprived and continue to deprive Plaintiffs of their money and other property. And obtaining higher payments than is legally permissible is the intended consequence of these predicate acts. Accordingly, Plaintiffs have adequately alleged acts of mail and wire fraud as the proximate cause of their injury.

### iii. Plaintiffs Plausibly Plead Continuity under RICO

Plaintiffs' proposed Amended Complaints also allege the continuity necessary to state a plausible pattern of racketeering activity. Under RICO a plaintiff must show either "closed-ended" or "open-ended" continuity. Closed-ended continuity involves "a series of related predicates extending over a substantial period of time." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). The Second Circuit has generally found that closed-ended continuity requires the occurrence of predicate acts over a period of two years or more, though other factors such as the number and variety of predicate acts, the number of participants and victims, and the presence of separate schemes are also relevant. *Id.*

Here, Plaintiffs are currently aware of consumer complaints about the Dealerships and M&T and SCUSA's business practices from at least December 2012 spanning to the present. (As pled, the earliest known transactions for Alkhatib and Gabrys occurred in December 2012.) As such it is reasonable to infer from all facts alleged that the Defendants have been operating in violation of §§ 1341 and 1343 for the entire course of their dealings together. To date, Plaintiffs do not know exactly when Defendants first entered into an agreement to assign consumer auto loans, but that information is certainly in the Defendants' possession. Discovery demands for the information have been served, and it is plausible that the responses will show that the scheme

spanned for more than two years.  At this early stage, it is sufficient that Plaintiffs have alleged colorable grounds of closed-ended continuity.

The proposed Amended Complaints also adequately allege open-ended continuity.  "To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  *Cofacredit*, 187 F.3d at 242 (citing *HJ, Inc. v. N.W. Bell*, 492 U.S. 229, 242-43 (1988)).  This threat is presumed where the enterprise is primarily engaged in racketeering activity, and the predicate acts are inherently unlawful.  *Id.*  Where an enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.  *Watral v. Silvernails Farm, LLC*, 51 Fed. Appx. 62 (2d Cir. 2002) (citing *Cofacredit*, 187 F.3d 229); *Sky Med. Supply, Inc. v. SCS Support Claims Servs.*, 2014 U.S. Dist. LEXIS 63242, *44 (E.D.N.Y. 2014) (citing *Cofacredit*, 187 F.3d 229).

Although the enterprise here may consist of ostensibly legitimate businesses, the predicate acts of wire and mail fraud were Defendants' regular way of operating and the nature of these acts itself implies a threat of continued criminal activity.  The allegations, and the Defendants' own filings, indicate that it was M&T Bank and SCUSA's regular way of doing business to fund loans and demand payment on them, regardless of any underlying fraud. (*See* M&T Letter Opp. at 2 (describing its conduct with respect to the Plaintiffs' transactions as its standard practices with these Dealerships); SCUSA Letter Opp. at 2 (indicating that SCUSA routinely accepts and funds loans from the Dealerships and that their actions with respect to Plaintiffs' transaction are part of the usual manner of doing business).)  Moreover, the numerous

16

consumer complaints about the Dealerships and the finance companies allow a reasonable inference that this participation in a scheme to defraud the Dealerships' customers is the regular way of doing business for all Defendants.

Furthermore, the nature of these acts of fraud implies a threat of continued criminal activity. M&T Bank and SCUSA continue to demand payments and report past due payments to credit reporting agencies, perpetuating the fraud and resultant injury. Accordingly, Plaintiffs have alleged open-ended continuity.

### iv. Plaintiffs' Pleadings Satisfy Rule 9(b) Standards

Finally, contrary to M&T Bank's arguments, the proposed Amended Complaints satisfy the heightened specificity required of fraud claims under Rule 9(b). In order to comply with this requirement, pleadings must state the time, place, and nature of the alleged fraud, as well as facts supporting a strong inference of fraudulent intent. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-173 (2d Cir. 1999).

Plaintiffs' Amended Complaints set forth numerous detailed instances in which the Dealerships, M&T Bank and SCUSA participated in wire and mail fraud, as cited above. The allegations specify the false nature of loan applications, retail installment contracts, billing demands, and telephonic communications, and the dates on which they were transmitted. (AC: *Gabrys* ¶¶ 153-155; *Freire* ¶¶ 149-151; *Tuhin* ¶¶ 101-103; *Dong* ¶¶ 145-147; *Chowdhury* ¶¶ 155-157.) In addition, although a plaintiff cannot be expected to plead a defendant's specific state of mind, *see Connecticut National Bank v. Fluor Corp*, 808 F.2d 957, 962 (2d Cir. 1987), the facts support a strong inference of deliberate disregard by describing M&T Bank and SCUSA's unaltered conduct following direct notice of the fraud. For these reasons, the proposed Amended Complaints state plausible claims for relief under RICO against the Dealerships, M&T Bank, and SCUSA.

### b.  RICO Claim against Mamdoh Eltouby, Nada Eltouby and Julio Estrada

Mr. Tuhin seeks to add a RICO claim against Mamdoh Eltouby, Nada Eltouby and Julio Estrada, and all other Plaintiffs seek only to re-plead and refine the RICO claims they have already asserted against these Defendants.  Mr. Tuhin alleges that these Defendants formed an enterprise that is a legal entity—New York Motor Group, LLC—with the common purpose of profiting by placing consumers into larger automobile loan obligations than were advertised or agreed to, and by misappropriating payments from consumers in purported satisfaction of these loans. He allege that this enterprise engaged in a pattern of racketeering activity based on wire and mail fraud.  He suffered financial injury as a result of this enterprise.

Mr. Tuhin has alleged facts that satisfy the broad standard of showing they have "at least colorable grounds for relief."  Plaintiffs have alleged that each enterprise Defendant knowingly made or ratified material misrepresentations in order to induce them to purchase vehicles and incur loan obligations, that they actually relied on these misrepresentations in doing so, and that they were injured as a result.  These misrepresentations included the applicable interest rate and monthly payments for the duration of the loan; the ability to automatically refinance after a certain number of timely payments; the necessity, acquisition, and terms of add-on products, like warranties; and the crediting of cash towards down payments. (*See, e.g.*, AC: *Tuhin* ¶¶ 18, 19, 23, 26, 27, 29-31, 34, 37, 46.)  In addition, the use of the wires was a necessary component of the fraudulent scheme as it enabled the transmission of finance applications and receipt of funds. (AC: *Tuhin* ¶ 48.)

Specifically, Mr. Tuhin alleges that on June 21, 2013 and June 22, 2013, Mr. Estrada specifically falsely stated that his monthly payments would be $433.43, with an interest rate of 5.84%, only for the first six months of his loan; and that if he made these six payments on time,

the interest rate would drop to 2.17%, and the monthly payments would be $128.32 for the remaining 54 months.  Mr. Estrada falsely explained that the car price would balloon to $26,209 only if Mr. Tuhin missed any of the first six payments.  (AC: *Tuhin* ¶¶ 23, 27.)  Ms. Eltouby repeated these same lies just two days later. (AC: *Tuhin* ¶ 47.)  Mr. Estrada also misrepresented the nature of the documents Mr. Tuhin was signing, and intentionally deceived him into signing the operative sales order, which Mr. Tuhin had flatly refused to sign it when he reviewed it. (AC: *Tuhin* ¶¶ 29-31, 34.)  Mr. Eltouby knew of, ratified, and participated in this scheme because, rather than respond to the complaints of consumers protesting the dealership's fraudulent practices, he refused to revoke the transactions and even attempted to run them over with his vehicle. (AC: *Tuhin* ¶¶ 41, 55, 64, 85).  Furthermore, Mr. Tuhin alleges that this fraudulent scheme comprised the core of NYMG's operation. (AC: *Tuhin* ¶ 80-85).  The enterprise Defendants abused this legal entity in order to conduct criminal activity.  These allegations state a colorable claim under RICO sufficient to meet the liberal standard under Rule 15.

All other Plaintiffs seek to refine the RICO claims already asserted against the Dealerships Defendants in their Amended Complaints to primarily distinguish between the nature of the fraudulent enterprise (the Dealership) and the participants in the enterprise (the Eltoubys and Mr. Estrada and other employees and agents of the Dealership) and bring their Complaints into conformity with each other, where factually possible.

### c.  Direct Liability of M&T Bank and SCUSA for Violating NYGBL § 349

Based on the widespread complaints of fraudulent misrepresentations by the Dealerships, M&T Bank and SCUSA, Mr. Gabrys and Mr. Freire and Ms. Osorio seek to assert direct liability against M&T Bank and SCUSA, respectively, under NYGBL § 349 based on newly discovered information.  Mr. Tuhin seeks to clarify his claims of direct liability against M&T Bank under NYGBL § 349 and for fraud, and, in the alternative negligence.

NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To establish liability, a plaintiff must show (1) that the subject transaction was consumer-oriented; (2) that the defendant's deceptive conduct was materially misleading; and (3) that the deceptive conduct harmed plaintiffs. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-26 (1995).

Essentially, standard practices are "consumer-oriented" when they "potentially affect[ ] similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 27. Following this reasoning, courts have determined that "[a] party seeking [the remedies of § 349] must charge conduct that is consumer oriented with an impact on the public at large" and that a plaintiff must "establish injury to the public generally as distinguished from injury to the plaintiff alone." *Moustakis v. Christie's, Inc.*, 68 A.D.3d 637, 637-638 (App. Div. 1st Dept. 2009); *see also Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 83 F. Supp. 605, 608 (E.D.N.Y. 1993); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988) ("[T]he gravamen of the complaint must be consumer injury or harm to the public interest.").

Furthermore, materially misleading conduct includes "a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances." *Zurakov v Register.Com, Inc.*, 304 A.D.2d 176, 760 N.Y.S.2d 13 (App. Div. 1st Dept 2003) (citing *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25-26).

Here, Plaintiffs allege that M&T Bank and SCUSA committed deceptive acts and practices that broadly impact consumers, separate and apart from any such claim arising from NYMG's conduct. Specifically, as part of their policies and practices, M&T and SCUSA,

20

routinely, falsely, and deceptively:

1. Explain to consumers that the banks are entitled to full payments under loans assigned by the Dealerships, although they know or should know that the loan obligations were induced by fraud;
2. Explain to consumers who complain of fraud that the banks will conduct or have conducted an investigation when they have not meaningfully done so, and have no intention of doing so or of altering their demands for full payment in light of what they may discover;
3. Tell consumers that the banks are unable to alter the retail installment contracts they have been assigned in light of any fraud that has occurred, and as a result the consumers are still liable for all amounts owing on the face of the contracts.
4. Continue to demand payments and report missed payments to credit reporting agencies as past due.

AC: *Tuhin* ¶¶ 199-202, *Freire* ¶¶ 259-263; *Dong*¶¶ 244-248, *Chowdhury* ¶¶ 263-265.

As a result of these misrepresentations, as alleged in the Amended Complaints, M&T Bank and SCUSA misled consumers into continuing to make higher payments, and remain obligated to a higher loan amount, than is legally permissible given the underlying fraud.

Given the numerous reports of these and other false representations made to consumers, as alleged, the proposed Amended Complaints adequately plead consumer-oriented actions that are materially misleading and cause Plaintiffs' injuries. Moreover, as stated above in Section B.3.a, both M&T Banks and SCUSA admit that these actions exemplify their routine business practices. (M&T Letter Opp. at 2; SCUSA Letter Opp at 2.) Accordingly, Plaintiffs state plausible claims for violations of NYGBL § 349 based on the conduct of M&T Bank and SCUSA, independent of that of the Dealerships.

Finally, Mr. Tuhin seeks to amend his Complaint to clarify the bases for his claims of direct liability against M&T Bank. He alleges both, as just described, that M&T Bank's independent misrepresentations to consumers and continued demands for payments violate NYGBL § 349. He also alleges that M&T Bank's wiring of funds aided and abetted NYMG's own violation of NYGBL § 349 and commission of common law fraud. "To establish liability

for aiding and abetting a fraud, a plaintiff must show that 1) . . . a third party committed a fraud, 2) the defendant knew or should have known of the fraud and 3) defendant's conduct gave substantial assistance or encouragement to engage in the tortuous conduct." *Vaughn v. Consumer Home Mortgage, Inc.*, 01-CV-7937(ILG), 2003 WL 21241669 (E.D.N.Y. Mar. 23, 2003). Furthermore, a business may be liable for aiding and abetting another business's violation of § 349. *See Banks v. Consumer Home Mortgage, Inc.*, 01-CV-8508 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) ("Given that Section 349 is "a remedial statute" that requires "a liberal construction and application[,]" there is no reason to doubt that aiding and abetting liability exists." (internal citation omitted)). Here, M&T Bank substantially assisted NYMG's own consumer-directed business acts and practices, and fraudulent conduct, by funding the fraudulent loan two days after Mr. Tuhin notified the bank of its fraudulent nature.

### d.  NY Usury Law Claim against NYMG and M&T Bank

Mr. Tuhin seeks to add a claim under NY General Obligations Law § 5-501, which caps the legal rate of interest in New York at "six per centum per annum unless a different rate is prescribed in §14-a of the Banking Law." Section 14-a(1) provides, "[t]he maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum."  NYMG, the party to the initial retail installment contract, is not a "national banking association," and therefore is not exempt from state usury laws under 12 U.S.C. § 85.

Here, the face of the retail installment contract contains hidden finance charges.  These charges include the $3,000 service contract Mr. Estrada told Mr. Tuhin he was required to purchase in order to obtain financing, as well as the more than $10,000 increase in the sale price from the agreed-to price as a result of the financing structure.  Factoring these hidden finance charges, the interest rate for Mr. Tuhin's loan is well over 16%.  M&T Bank is liable for these violations under the anti-holder in due course provision of the retail installment contract, which

provides that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." (AC: *Tuhin* ¶¶ 70, 71); *see* FTC Holder Rule16 C.F.R. § 433; NY Pers. Prop. Law § 302(9).

M&T Bank argues that it is exempt from the usury cap because it is a national banking association. This argument fails for two reasons: First, any claimed exemption as a purported national banking association is irrelevant because the party to the usurious contract, NYMG, cannot claim such an exemption, and M&T Bank's liability is vicarious to NYMG's liability.

### e.  Negligent Hiring Claim against NYMG and Mamdoh Eltouby

Mr. Tuhin seeks to add a pendent common law claim for Negligent Hiring, Retention, Training, and Supervision against NYMG and Mamdoh Eltouby. NYMG and its owner, Mr. Eltouby, failed to exercise reasonable care in selecting, instructing and supervising the employees and agents it hired to sell motor vehicles and arrange vehicle purchase loans.

To support a claim for negligent hiring, supervision, retention, or training under New York law, a plaintiff must show that "the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Dewitt v. Home Depot U.S.A., Inc.*, 10-CV-3319 KAM, 2012 WL 4049805 (E.D.N.Y. Sept. 12, 2012); *see also, e.g.*, *Sheila C. v. Povich*, 11 A.D.3d 120, 129, 781 N.Y.S.2d 342, 350 (App. Div. 1st Dep't 2004).

Since filing the Complaint, Mr. Tuhin has discovered significant information about Julio Estrada's criminal history prior to his employment at NYMG. (AC: *Tuhin* ¶¶ 77-85). Mr. Estrada had been arrested for automobile-related fraud—the same criminal conduct he continued to commit as an employee of NYMG—months before Mr. Eltouby hired him as his finance manager. This fact was public record and easily discoverable through a basic internet search, let alone the type of in-depth background search that would be appropriate during the hiring process

23

for a position that involved handling customers' money and explaining financing terms he had

negotiated.  Furthermore, Mr. Tuhin, the other related-Plaintiffs and, upon information and

belief, other consumers, complained directly to Mr. Eltouby about Mr. Estrada's continued

criminal conduct.  Rampant criminal conduct was the standard operating norm at NYMG, and

conducted by other agents and employees, including Ms. Eltouby, the John Doe identified as

Dewan, the John Doe identified as Mohammed, and the John Does named in the Complaints.

NYMG and Mr. Eltouby knew of, or recklessly disregarded, their agents' and employees'

propensity to commit the unlawful acts described herein or, at the very least, should have known

of such propensity had they conducted an adequate hiring and supervision review process.  Mr.

Tuhin was injured as a result of this negligence.

### f.  Amend Defendant M&T Bank's Name

Plaintiffs Tuhin, Gabrys, and Chowdhury seek to rename the entity incorrectly sued as

"M&T Bank Corporation" as "Manufacturers and Traders Trust Company."   "Rule 15 provides

for relation back where the party to be added as a defendant would have been named in the

original Complaint but for a "mistake concerning the identity of the proper party." Fed.R.Civ.P.

15(c)(3). The Second Circuit has held that a "mistake" in identifying a defendant occurs for

purposes of Rule 15(c) when it is the result of "misnomer or misidentification," or when a

plaintiff omits the individual defendant altogether.  *Barrow v. Wethersfield Police Dep't,* 66 F.3d

466, 469–70 (2d Cir.1995).  Plaintiffs seek merely to correct a clerical error.  The original

Complaints named M&T Bank Corporation, based on the loan documents, which refer only to

M&T Bank. However, Manufacturers and Traders Trust Company interposed Answers and has

litigated the case and Defendant's counsel has advised Plaintiffs that Manufacturers and Traders

Trust Company is the intended and correct Defendant.

### g.  Alternative negligence claim against M&T Bank in Tuhin

Tuhin seeks to amend his complaint to allege, in the alternative to the fraud claim, negligence against M&T Bank for funding the loan after being placed on notice of the fraud. **AC** AC: *Tuhin* ¶¶ 252-258. As stated in the AC: *Tuhin* ¶¶ 255, it has come out in discovery that M&T Bank in fact has no policies and procedures in place identify suspicious or potentially fraudulent financing applications, which at a minimum is negligent.

## CONCLUSION

For the foregoing reasons, the Court should allow Plaintiffs to amend their Complaints.

 /s/ Peter T. Lane
Peter T. Lane, Esq.
SCHLANGER & SCHLANGER, LLP
*Attorneys for all related-Plaintiffs except Tuhin*
9 East 40th Street, Suite 1300
New York, NY 10016
Tel: 914-946-1981
peter.lane@schlangerlegal.com

 /s/ Carolyn E. Coffey
Carolyn E. Coffey (CC6741), and
Ariana Lindermayer (AL0625), of counsel to
Jeanette Zelhof, Esq.
MFY LEGAL SERVICES, INC.
  *Attorneys for Tuhin*
299 Broadway, 4th Floor
 New York, NY 10007
 Tel: (212) 417-3701
Tel: (212) 417-3742
Fax: (212) 417-3890
Email: ccoffey@mfy.org
Email: alindermayer@mfy.org

Ahmad Keshavarz (AK9602)
*Attorney for Tuhin*
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809 (toll-free)
Email: ahmad@NewYorkConsumerAttorney.com