**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

ANWAR ALKHATIB,

        Plaintiff,                          **13-CV-02337(ARR)(SMG)**

v.

NEW YORK MOTOR GROUP LLC, et al.,

        Defendants.
-------------------------------------------------------------

SHAHADAT TUHIN,

        Plaintiff                            **13-CV-5643(ARR)(SMG)**

v.

NEW YORK MOTOR GROUP LLC, et al.,

        Defendants.
-------------------------------------------------------------

BORIS FREIRE and MIRIAM OSORIO,

        Plaintiffs,                     **13-CV-7291(ARR)(SMG)**

v.

NEW YORK MOTOR GROUP LLC, et al.,

        Defendants.
-------------------------------------------------------------

SIMON GABRYS,

        Plaintiff,                       **13-CV-7290 (ARR)(SMG)**

v.

NEW YORK MOTOR GROUP LLC, et al.,

        Defendants.
-------------------------------------------------------------

ZHENGHUI DONG ,

        Plaintiff,                       **14-CV-2980(ARR)(SMG)**

v.

NEW YORK MOTOR GROUP LLC, et al.,

        Defendants.
-------------------------------------------------------------

NASRIN CHOWDHURY,

        Plaintiff,                       **14-CV-2981(ARR)(SMG)**

v.

NEW YORK MOTOR GROUP LLC, et al.,

        Defendants.
-------------------------------------------------------------

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO AMEND THE COMPLAINTS AND IN OPPOSITION TO MOTIONS TO DISMISS

SCHLANGER & SCHLANGER, LLP
9 East 40th Street, Suite 1300
New York, New York 10016
(914) 946-1981

LAW OFFICES OF AHMAD
KESHAVARZ
16 Court Street, 26th Floor
Brooklyn, New York 11241
(718) 522-7900

MFY LEGAL SERVICES, INC.
299 Broadway, 4th Floor
New York, New York 10013
(212) 417-3700

**Table of Contents**

Table of Authorities ................................................................................................. iii

Preliminary Statement ............................................................................................. 1

Argument ................................................................................................................... 2

    I.   Applicable Legal Standard ......................................................................... 2

    II.   M&T Bank's Arguments .............................................................................. 4

        A.   RICO .............................................................................................. 4

           1. RICO's Purpose ...................................................................... 4

           2. Plaintiffs Adequately Allege a RICO Enterprise ..................... 6

           3. Plaintiffs Adequately Allege M&T's Knowing Participation ................. 8

           4. Plaintiffs Adequately Allege a Pattern of Racketeering Activity ............ 10

              a.  Plaintiffs Adequately Allege Interrelated Acts with a Common Purpose ........................................... 10

              b.  Plaintiffs Adequately Allege Continuity .......................... 11

        B.   NY General Business Law .......................................................... 12

        C.   NY Usury Law ........................................................................... 14

        D.   TILA .......................................................................................... 15

        E.   Magnuson-Moss Warranty Act ................................................... 16

    III.  Dealership Defendants' Arguments Against All Plaintiffs Except Mr. Tuhin . 18

        A.   RICO .......................................................................................... 18

           1.   Plaintiffs Adequately Allege Predicate Acts of Fraud ................... 18

           2.   Plaintiffs Adequately Allege a Pattern of Racketeering Activity With Requisite Continuity ................................. 20

3. Plaintiffs Adequately Allege a RICO Enterprise ............................ 20

B. The Eltoubys' Liability ................................................................. 23

1. Plaintiffs Do Not Seek Personal Liability under TILA,
MVRISA, NYGBL or for Usury, Fraud, or Rescission ................. 23

2. Plaintiffs Adequately Allege a Claim for Negligent
Retention and Hiring Against Mamdoh Eltouby ........................... 23

Conclusion ................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... 2

*Bankers Trust co. v. Rhoades*,
  741 F.2d 511 (2d Cir. 1984)........................................................................ 20

*Banks v. Consumer Home Mortgage, Inc.*,
  No. 01-CV-8508 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) .............. 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 , 167 L. Ed. 2d 929 (2007).................................. 2, 3

*Bennett v. U.S. Trust Co. of N.Y.*,
  770 F.2d 308, 315 (2d Cir. 1985) ................................................................ 22

*Boritzer v. Calloway, et al*,
  No. 10 Civ. 6264(JPO), 2013 WL 311013, 2013 U.S. Dist. LEXIS 11119
  (S.D.N.Y. Jan. 24, 2013)............................................................................ 19

*Chanayl v. Gulati*,
  169 F.3d 168, 170-171 (2d Cir. 1999) .......................................................... 18

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999)........................................................................ 11

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007).......................................................................... 12

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ............................................................ 6

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001).......................................................................... 11

*Diaz v. Paragon Motors of Woodside, Inc.*,
  424 F. Supp. 2d 519 (E.D.N.Y. 2006) ............................................................ 16

*Eaves v. Designs for Finance, Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011)............................................................ 3

*Enobakhare v. Carpoint, LLC*,
  No. 08-CV-4798-ARR, 2011 WL 703920 (E.D.N.Y. Jan. 10, 2011),

report and recommendation adopted, 2011 WL 704902 (Feb. 16, 2011)............................17

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)...................................................................................... 21

*Fleming v. Lind-Waldock & Co.*,
    922 F.2d 20 (1st Cir. 1990)........................................................................................ 3

*Goldstein v. Pataki*,
    516 F.3d 50(2d Cir. 2008) ( ....................................................................................... 2

*Hillair Capital Investments, L.P. v. Integrated Freight Corp.*,
    963 F. Supp. 2d 336 (2013) ..................................................................................... 14

*In re The Colad Grp., Inc.*,
    324 B.R. 208 (W.D.N.Y. Bankr. 2005) ................................................................... 14

*Lloyd Capital Corp. v. Pat Henchar, Inc.*,
    80 N.Y.2d 124, 589 N.Y.S.2d 396 (1992) ............................................................. 14

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*,
    753 F.3d 395 (2d Cir. 2014)...................................................................................... 2

*Moore v. It's All Good Auto Sales, Inc.*,
    907 F. Supp. 2d 915 (W.D. Tenn. 2012).................................................................. 5

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983)......................................................................................... 5

*Moustakis v. Christie's, Inc.*,
    68 A.D.3d 637 (App. Div. 1st Dept. 2009).............................................................. 12

*Oswego Laborers' Local 214 Pension Fund v. Marine*,
    85 N.Y.2d 20 (1995) ............................................................................................... 12

*Patrizzi v. Bourne in Time, Inc.*
    No. 11 Civ. 2386(PAE), 2012 WL 4833344,
    2012 U.S. Dist. LEXIS 146861 (S.D.N.Y. Oct. 11, 2012) ..................................... 19

*Peguero v. 601 Realty Corp.*,
    58 A.D.3d 556 (1st Dept. 2009)............................................................................ 24

*Perry v. Household Retail Servs., Inc.*,
    953 F. Supp. 1370(M.D. Ala. 1996) on reconsideration sub nom ........................... 15

iv

*Reeves v. Ernst & Young*,
    507 U.S. 170 (1993)...........................................................................................9

*United States v. Huber*,
    603 F.3d 387 (2d Cir. 1979)........................................................... 5, 7, 21

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
    199 F.3d 91 (2d Cir. 1997)..........................................................................10

*Schlessinger v. Valspar Corp.*,
    21 N.Y.3d 166, 991 N.E.2d 190 (2013) ...............................................13

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) ......................................................................................5

*United States v. Turkette*,
    453 U.S. 576 (1981).....................................................................................22

*Sky Med. Supply, Inc. v. SCS Support Claims Servs.*,
    No. 12–CV–6383 (JFB)(AKT), 2014 WL 1801139,
    2014 U.S. Dist. LEXIS 63242 (E.D.N.Y. May 7, 2014) .....................11

*Stone v. Rivera*,
    2014 NY Misc. LEXIS 1990 (Supreme Court, N.Y. Cnty, April 24, 2014) ...........24

*Sykes v. Mel Harris & Assocs.*,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010).......................................................5

*United States v. Porcelli*,
    865 F.2d 1352 (2d Cir. 1989).....................................................................6

*United States v. Huber*,
    603 F.2d 387 (2d. Cir 1979).......................................................... 5, 7, 21

*United States v. Precision Medical Laboratories*,
    593 F.2d 434 (2d Cir. 1978).......................................................................8

*United States v. Sarantos*,
    455 F.2d 877 (2d Cir. 1972).......................................................................8

*Vincent v. The Money Store*,
    736 F.3d 88 (2d Cir. 2013).......................................................................15

## **Statutes**

15 USC § 1601, *et seq.*............................................................................................1

15 U.S.C. § 1602(g) ................................................................................................... 15

15 U.S.C. § 1641(a) ................................................................................................... 15

15 U.S.C. § 2301, *et seq.*, ........................................................................................... 1

15 U.S.C. § 2310(d)(3)(B) ..................................................................................... 16,17

28 U.S.C. § 1332 ....................................................................................................... 17

18 U.S.C. §§ 1341 ..................................................................................................... 18

18 U.S.C. § 1343 .................................................................................................. 18, 19

18 U.S.C. § 1961, *et seq* ........................................................................................ 1, 20

New York GBL § 349 ................................................................................ 1, 12, 13, 22

New York GBL § 350 ................................................................................................. 22

**Rules**

Fed. R. Civ. P. 9 ......................................................................................................... 1

Fed. R. Civ. P. 12 .................................................................................................... 1, 2

Fed. R. Civ. P. 15 ....................................................................................................... 1

**Regulations**

12 C.F.R. 226.17 .................................................................................................. 16, n. 8

12 C.F.R. pt. 226, supp. I at 300 ............................................................................... 15

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs in the above-captioned related cases submit this reply memorandum of law in further support of their motions pursuant to Fed. R. Civ. P. 15(a)(2) for leave to amend their Complaints, and in opposition to the cross-motions to dismiss pursuant to Fed. R. Civ. P 9(b), 12(b)(1) and 12(b)(6) filed respectively by M&T Bank Corporation ("M&T Bank) and New York Motor Group LLC ("NYMG"), Planet Motors Cars, Inc. ("Planet Motor"; with NYMG, "Dealerships"), Mamdoh Eltouby and Nada Eltouby (with the Dealerships, "Dealership Defendants").[1]

M&T Bank asks the Court to deny Plaintiff Shahadat Tuhin's proposed claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* and NY Usury Law, General Obligations Law § 5-501, and dismiss his claims under the Truth in Lending Act ("TILA"), 15 USC § 1601, *et seq.*; the Magnuson-Moss Warranty Act, 15 USC § 2301, *et seq.*, and NY General Business Law ("NYGBL") § 349; to deny Plaintiff Simon Gabrys's proposed RICO and NYGBL § 349 claims, and dismiss his NY Usury Law claim; and to dismiss Nasrin Chowdhury's RICO, NY Usury Law and NYGBL § 349 claims.[2]

The Dealership Defendants move only against Plaintiffs Anwar Alkhatib, Boris Freire and Miriam Osorio, Zheng Hui Dong, Mr. Gabrys and Ms. Chowdhury, to dismiss the RICO claim asserted against them collectively, and all claims asserted against Mr. Eltouby and Ms. Eltouby individually. The Dealership Defendants do not move to dismiss or oppose amendments

---

[1] Defendants Capital One Auto Finance ("COAF") and Santander Consumer USA ("SCUSA") have not opposed the motion to amend or moved to dismiss.

[2] M&T Bank does not oppose the other proposed amendments, including the additional factual allegations and Mr. Tuhin's proposed negligence claims.

to include these Plaintiffs' remaining claims.  The Dealership Defendants do not oppose Mr.

Tuhin's motion to amend or move to dismiss any of his claims.[3]

Plaintiffs' motion to amend should be granted because the claims they seek to add are not

futile.  Likewise, M&T Bank and the Dealership Defendants' motions to dismiss should be

denied because Plaintiffs allege claims for relief that are plausible on the face of the Complaints.

## ARGUMENT

### I.    Applicable Legal Standard

M&T Bank and the Dealership Defendants oppose the motions to amend on the grounds

of futility.  This element adopts the same standard as a Rule 12(b)(6) motion to dismiss.  *See*

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 753 F.3d 395, 416 (2d Cir. 2014).  Under

Rule 12(b)(6), the factual allegations, accepted as true, must "state a claim to relief that is

plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  The question of whether this right to relief is more than just

speculative is a legal one.  *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (reviewing the

grant of a motion under Rule 12(b)(6) *de novo*).

The Rule 12(b)(6) standard stands in contrast to the standard on a motion for summary

judgment, which considers whether the evidence is sufficient to create a genuine dispute of

material fact.  These motions "place different burdens on the parties at different times in the

---

[3] The Dealership Defendants do not oppose Mr. Tuhin's motion to amend or move to dismiss
any of his claims.  Even if the cross-motions are granted in their entirety, therefore, Mr. Tuhin's
TILA claim against these Defendants survives, conferring federal question jurisdiction and
allowing for pendent jurisdiction over the remaining state law claims against M&T Bank.
Accordingly, regardless of the outcome of these motions, his case will proceed, and the other
related cases could proceed, in federal court as against all defendants.

course of litigation." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1990); *see Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 246 (S.D.N.Y. 2011).

In its motion papers, M&T Bank confuses these standards, repeatedly arguing that Plaintiffs' claims should be dismissed, or the proposed amendments denied, because the Plaintiffs have no "evidence" to support their allegations.  (*See, e.g.*, M&T Bank, Memorandum in Opposition to Motion to Amend and in Support of Motion to Dismiss ("M&T Bank MOL"), at 11 ("Plaintiffs' counsel made no supported assertion that M&T knew or should have known the application was fraudulent."), at 14 (describing "[t]hese specious claims without any support either in the proposed amended complaint or in disclosure provided"), at 15 (observing that "there is no proof of" Mr. Tuhin's allegation that M&T Bank approved his loan even though it greatly exceeded the value of the collateral), at 20 (arguing that "the *Tuhin* plaintiff has failed to proffer any proof of that payment [i.e., the undisclosed $630 down payment]"), at 21 (stating that "[t]here is NO substantive evidence submitted that M&T Bank had violated [the NY Usury Law]"), at 22 ("Neither [Mr. Tuhin nor Mr. Gabrys] proffers any proof to substantiate such claims [under NY General Business Law].").)  Plaintiffs do not have an evidentiary burden, however.  They must only show that their factual allegations, if true, plausibly describe unlawful conduct.

Moreover, as will be discussed in further detail below, Plaintiffs meet the plausibility standard, as they allege that M&T Bank was apprised of the fraud and criminal activity through, *inter alia*, the phone calls placed to it by Plaintiffs and other consumers who reported details of how they had been defrauded by the Dealership.  And, despite this knowledge, M&T Bank, as alleged, continued to fund loans and collect payments on these fraudulently induced obligations.

Accordingly, Plaintiffs have met their burden to state claims for relief that are plausible on their face.

Finally, M&T Bank goes so far as to reference, and even attach, certain documents that were produced in discovery. Not only is M&T Bank's rendition incomplete—overlooking unequivocal documentary evidence, including phone records of Mr. Tuhin's lengthy calls to M&T Bank several days before it financed the loan and an ATM receipt of the additional down payment not disclosed on the Retail Installment Contract ("RIC")—but, more importantly, it is entirely inappropriate on a motion to dismiss, and Plaintiffs object to consideration thereof.[4] Accordingly, Plaintiffs properly treat all Defendants' opposition/motion as a motion to dismiss and do not include any attachments.

## II.     M&T Bank's Arguments

### A.     RICO

M&T Bank broadly attacks Plaintiffs' RICO claims as speculative and appears indignant at the perceived stigma of being a racketeer, despite continuing to profit from a convicted felon's fraudulent acts. Besides its general objections to being accused of racketeering, M&T Bank specifically argues that Plaintiffs have not adequately alleged that it formed an enterprise with the Dealerships or that it knowingly participated in a pattern of racketeering activity.

#### 1.     RICO's Purpose

The gist of M&T Bank's arguments is that RICO was intended to prevent the infiltration of businesses by organized crime, and only applies to traditional mobsters, a la the Godfather or the Sopranos; it does not apply to the numerous fraudulent transactions described in the Proposed

---

[4] Nor should the Court convert this motion to dismiss into a motion for summary judgment pursuant to Rule 12(d), because discovery is ongoing and depositions have not yet begun.

Amended Complaints, which amount to no more than the routine conduct of legitimate businesses.

This argument is misguided.  RICO liability is not restricted to the Cosa Nostra, drug cartels, and prostitution rings.  *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 21 (2d Cir. 1983) (relying on RICO's legislative history to hold that it is not restricted to organized crime); *see also United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989) (affirming RICO conviction for state sales tax evasion "by virtue of the extraordinarily broad sweep of RICO and of the federal mail fraud statute").  Rather, Congress intended it to be used against ostensibly legitimate businesses, *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985); *United States v. Huber*, 603 F.2d 387 (2d. Cir 1979) (finding a group of medical suppliers to be a RICO enterprise), particularly when they are alleged to conspire to defraud unsophisticated consumers.  *See Moore v. It's All Good Auto Sales, Inc.*, 907 F. Supp. 2d 915 (W.D. Tenn. 2012); *Sykes v. Mel Harris & Assocs.*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).  And the Judicial disdain for the "overuse" of RICO, cited by Defendants, has generally been reserved for cases where sophisticated parties try to transform their individual arms-length-transactions-gone-sour into civil RICO conspiracies.

That, however, does not characterize the instant related cases.  In fact, despite M&T Bank's protests, the conduct alleged in the Proposed Amended Complaints is not removed from criminal activity at all.  That is, the Dealership Defendants hired a felon – previously convicted for precisely the same sorts of fraud-in-auto-financing schemes alleged herein – to manage their financing process.  (Proposed Amended Complaint ("PAC"): *Chowdhury* ¶¶ 8-10.)  With the owner's knowledge, he and the other employees fraudulently induced consumers into higher loan obligations than agreed and legally permissible— with lies (PAC: *Gabrys* ¶¶ 14, 179; *Tuhin* ¶¶ 18, 23, 27, 29, 34), intimidation (PAC: *Alkhatib* ¶¶ 57-58), theft (PAC: *Freire* ¶¶ 85-91;

5

*Chowdhury* ¶¶ 87-90; *Dong* ¶¶ 81-96) and forgery (PAC: *Chowdhury* ¶¶ 134; *Dong* ¶¶ 81-96). In relation to Mr. Tuhin, Ms. Chowdhury, and Mr. Gabrys, M&T Bank made this criminal scheme possible by funding the loans and continuing to demand full payment under the terms, even *after* consumers complained to M&T Bank of the criminal and fraudulent actions of the Dealerships.

In other words, Plaintiffs allege that a group of individuals seeking to profit through theft and fraud inserted themselves into an ostensibly legitimate business – the sale and financing of motor vehicles – and that their financing partner, M&T Bank, knowingly has participated in the fraud, for the benefit of all Defendants. Such a scheme is precisely the kind of activity RICO was intended to prevent.

### 2. Plaintiffs Adequately Allege a RICO Enterprise

M&T Bank argues that the alleged enterprise was not an association-in-fact because it did not function as a continuing unit, distinct from the pattern of racketeering activity and the person conducting the affairs of the enterprise; it did not share a common purpose; and it did not have sufficient longevity to permit the associates to pursue the enterprise's purpose.

In order to properly allege association-in-fact, Plaintiffs must describe "how each defendant associated with the other defendants in the alleged enterprise, what the defendants' roles were in any alleged enterprise, the structure and functioning of the alleged enterprise, or even a coherent common purpose of the enterprise." *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010).

The Plaintiffs' allegations provide these requisite details, despite M&T Bank's assertions to the contrary. (M&T Bank MOL, at 7-9.) Plaintiffs describe a well-oiled machine, where one end—the Dealerships— advertise vehicles for sale and make the first contact with consumers

who are induced into higher-than-agreed loan obligations, while the other end—M&T Bank—rubber stamps the applications (pending only approval of the applicant's "creditworthiness," (*see* M&T Bank MOL, at 15), ignores consumer complaints of fraud, provides the crucial financing of the fraudulent loans, and demands payment from the victims of the scheme. As long as both ends of the machine play their parts, both will continue to profit through the assignment of these grossly inflated loans, which is the common purpose alleged.

Moreover, although Plaintiffs allege that the associates use interstate wire communications to advertise the vehicles and fund the loans, as well as interstate phone and mail communications to demand payment with knowledge of their fraudulent nature, these acts and the people conducting them are distinct from the larger enterprise, and only serve as tools to fulfill its greater common purpose.

The Proposed Amended Complaints also make clear that the Dealerships and M&T Bank have had a longstanding relationship where the Dealerships sell the vehicles, originate the loans, and then assign them to M&T Bank. M&T Bank even acknowledges that it conducted numerous transactions with the Dealerships beyond the three alleged here. (M&T Bank MOL, at 14). Thus, there was clearly sufficient time to pursue the enterprise's purpose.

Moreover, a series of corporations acting together to defraud has long been recognized as an association-in-fact under RICO. *See United States v. Porcelli*, 865 F.2d 1352, 1362 (2d. Cir. 1989); *Huber*, 603 F.3d at 393-94. Accordingly, Plaintiffs adequately allege an association-in-fact enterprise consisting of the two Dealerships and M&T Bank.

### 3.    Plaintiffs Adequately Allege M&T Bank's Knowing Participation

The scienter requirement for mail and wire fraud is satisfied when the defendants acts with "deliberate disregard" of the truth. *United States v. Precision Medical Laboratories*, 593 F.2d 434, 443-44 (2d Cir. 1978); *United States v. Sarantos*, 455 F.2d 877, 881-82 (2d Cir. 1972).

M&T Bank argues that Plaintiffs have not alleged its knowing participation in the enterprise's unlawful conduct. (M&T Bank MOL, at 8-9). In doing so, however, it ignores Plaintiffs' chief factual allegations that the bank had actual knowledge of or deliberately disregarded the fraudulent nature of the loans it financed and collected. (PAC: *Tuhin* ¶ 69; *Gabrys* ¶ 155(k).)

For example, M&T Bank does not address Mr. Tuhin's allegations that he notified the bank that he had been defrauded two days before it wired NYMG the necessary funds. (PAC: *Tuhin* ¶¶ 43, 44, 48.) In fact, Mr. Tuhin provides specific dates, times and names for the conversations – hardly the "bare self-serving statements" M&T Bank posits. (M&T Bank MOL, at 15). Nor does M&T Bank address the extensive contact Ms. Chowdhury's son had with an M&T Bank representative who promised to conduct an investigation of the Dealership in October and November 2013 and even advised that Ms. Chowdhury should retain counsel to assist her with the Dealership. (PAC: *Chowdhury* ¶¶ 106-112.) And M&T Bank makes no mention of the phone conversation Simon Gabrys had with an M&T Bank representative on October 23, 2013 where he also informed the bank of the fraud perpetrated by the Dealerships. (PAC: *Gabrys* ¶¶ 126-127). Indeed, as alleged, M&T Bank continues to seek payment on these loans, now knowing that the finance manager who negotiated them was arrested for fraud in December 2012 (for which he pleaded guilty to grand larceny in December 2013), and was again arrested for fraud in March 2014. (*See e.g.*, PAC: *Tuhin* ¶¶ 78-83.)

Instead, M&T Bank mischaracterizes these allegations as watered-down claims that it knew or should have known of the fraud. (M&T Bank MOL, at 6.) But Plaintiffs do not claim mere ignorance. They allege the bank was actually notified of the fraud and deliberately disregarded this knowledge and other signs of fraud, including grossly inflated sales prices and mysterious add-on charges. (PAC: *Tuhin* ¶¶ 69, 72; *Chowdhury* ¶ 157(h); *Gabrys* ¶ 128). In other words, Plaintiffs do not allege that M&T Bank is "merely" an assignee of an RIC. Rather, they allege that it was an active, knowing and necessary component of a pervasive pattern of fraud. Such allegations satisfy the scienter requirement for wire and mail fraud.

M&T Bank also ignores Plaintiffs' ample and detailed instances of wire and mail communications in interstate commerce in order to: (1) finance the fraudulently induced loans; (2) collect on and report the resulting debts; and (3) deceive consumers as to their legal options and the bank's intent to meaningfully investigate. (PAC: *Gabrys* ¶ 151; *Freire* ¶ 147; *Tuhin* ¶ 109; *Dong* ¶ 142; *Chowdhury* ¶ 152.) These allegations go beyond the mere recitation of the elements of RICO and specify the contents, participants, time and place of each communication, satisfying Rule 9(b)'s heightened pleading requirement. They stand in stark contrast to the vague allegations deemed insufficient in the case cited by M&T Bank, *Mills v. Polar Molecular Corporation*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants.").

Furthermore, M&T Bank's argument that "there is no demonstration of how M&T participated in the control of any enterprise," (M&T Bank MOL, at 9), is a red herring. RICO requires only that a person "participate, directly or indirectly, in the conduct of such enterprises affairs." RICO § 1692(c). M&T Bank relies on a selective citation to *Reeves v. Ernst & Young*, to misleadingly argue its point. But *Reeves* "makes clear that RICO liability is not limited to

those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

In any event, M&T Bank participates directly in and even exerts control over the enterprise's affairs by providing the crucial financing for the automobile loans. This connection is readily apparent: by providing the financing, M&T Bank enables and furthers the Dealership Defendants' fraud. By withholding the financing, ceasing collection efforts, or at least meaningfully investigating the claims of fraud, M&T Bank could significantly ameliorate the resultant harm and incentivize the Dealerships to act lawfully.

Thus, in regularly conducting business with the Dealerships, M&T Bank knowingly participated in the enterprise's unlawful conduct.

### 4. Plaintiffs Adequately Allege a Pattern of Racketeering Activity

M&T Bank argues that Plaintiffs have not plausibly alleged a pattern of racketeering activity where the predicate acts are related and pose a threat of continued criminal activity. Here again, M&T Bank is wrong.

### a. Plaintiffs Adequately Allege Interrelated Acts with a Common Purpose

In order to be related, the predicates acts must "have same or similar purposes, results, participants, victims, or other methods of commission or otherwise [be] interrelated by distinguishing characteristics and [] not isolated events." *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 199 F.3d 91, 97 (2d Cir. 1997). Here, the predicate acts of wire and mail fraud easily meet this standard: together, they tell the story of a consumer auto loan: advertisement,

loan origination, assignment, and collection.  Moreover, each predicate act was dependent on the other, and vital to the enterprise's success.

### b. Plaintiffs Adequately Allege Continuity

Under RICO, Plaintiffs must also allege the pattern of activity with requisite continuity, either closed- or open-ended; they have plausibly plead both.

To satisfy closed-ended continuity, the fraudulent acts in the complaint must form a "series of related predicates extending over a substantial period of time."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir, 1999).  A period of two years or more generally qualifies as substantial, although other factors such as the number and variety of predicate acts, the number of participants and victims, and the presence of separate schemes are also relevant.  *Id.*  Plaintiffs plead that the enterprise with M&T Bank and the Dealerships was operating since at least 2012.  (*E.g.*, PAC: *Gabrys* ¶40.)  This period of time, coupled with the consistent and extreme pattern of mail and wire fraud, is substantial.

Open-ended continuity requires that the fraudulent acts pose "a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  *Cofacredit*, 187 F.3d at 242.  This threat is presumed where the enterprise is primarily engaged in racketeering activity.  *Id.*  Where it primarily conducts legitimate business, there must be some evidence to infer that the predicate acts were the regular way of operating the business.  *DeFalco v. Bernas*, 244 F.3d 286, 323 (2d Cir. 2001) (citing *Cofacredit*, 187 F.3d 229); *Sky Med. Supply, Inc. v. SCS Support Claims Servs.*, No. 12–CV–6383 (JFB)(AKT), 2014 WL 1801139, *14, 2014 U.S. Dist. LEXIS 63242, *44 (E.D.N.Y. May 7, 2014); *Moore*, 907 F. Supp. 2d at 926-27.

Plaintiffs allege that the Dealerships' regular course of business was to fraudulently induce consumers into higher loans obligations than agreed, and that M&T Bank's regular course

of business was to finance the loans despite complaints of fraud and to deceive consumers into believing they still had to make payments. Indeed, M&T Bank's papers admit that it was involved in numerous other auto-financing deals with the Dealerships. (M&T Bank MOL, at 14.) And given the allegations of just nine victims (six plaintiffs and three fact witnesses) of the Dealerships' fraud, and Mr. Tuhin, Mr. Gabrys, and Ms. Chowdhury's strikingly similar interactions with M&T Bank, it is decidedly implausible to infer that they were the only victims.[5] Rather, fraud was the routine.

Furthermore, the threat of criminal activity is ongoing as M&T Bank continues to honor the fraud by demanding payment and reporting the resultant debts to credit reporting agencies.[6]

## B.    NY General Business Law

M&T Bank argues that Plaintiffs have no proof that it is directly liable for violating NYGBL § 349. As explained in Plaintiffs' initial brief, § 349 requires that the deceptive acts be consumer oriented. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007). This element is satisfied when the misconduct "potentially affects similarly situated consumers," *Oswego Laborers' Local 214 Pension Fund v. Marine*, 85 N.Y.2d 20, 27 (1995), and has "an impact on the public at large," *Moustakis v. Christie's, Inc.*, 68 A.D.3d 637, 637-638 (App. Div. 1st Dept. 2009). A business may be liable for aiding and abetting another business's violation of § 349 if it knowingly

---

[5] M&T Bank is under Court Order to produce all information regarding complaints about the Dealerships' practices that it received since January 2010.

[6] Counsel for M&T Bank suggests that it "ceased all business dealings with the defendant dealerships on or around February 14, 2014." (M&T Bank, at 14.) But the assertions of counsel in a memorandum of law are not evidence, *Greenstreet Fin., L.P. v. CS-Graces, LLC*, No. 07 Civ. 8005 (KNF), 2011 WL 7555324 at *5 n.1 (S.D.N.Y. Apr. 18, 2011), and even if they were, the Court cannot consider extraneous information on a motion to dismiss, which is decided on the basis of the allegations accepted as true, *Roman Catholic Diocese of Rockville Ctr., New York v. Inc. Vill. of Old Westbury*, No. 09-CV-5195-DRH-ETB, 2011 WL 666252, at *11 n.19 (E.D.N.Y. Feb. 14, 2011).

and substantially assisted the fraud. *Banks v. Consumer Home Mortgage, Inc.*, No. 01-CV-8508 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003).

M&T Bank admits that Mr. Tuhin alleges "UNEQUIVOCALLY that M&T had actual knowledge of the alleged unlawful conduct of the dealership and assisted in the fraudulent activity." (M&T Bank MOL, at 22.)  But, as described above, it ignores the chief factual allegations that make these conclusions plausible.  These allegations, if true, are sufficient to state a claim of direct liability for aiding and abetting NYMG's § 349 violation in accordance with *Banks*.

Plaintiffs further allege that M&T Bank committed its own independent violation by consistently deceiving consumers who reported the dealerships' fraudulent conduct that the bank would meaningfully investigate their complaints and that the consumers were legally required to continue paying notwithstanding the fraud.  (*See e.g.*, PAC: *Tuhin* ¶¶ 199-202; *Chowdhury* ¶¶ 263-265; *Gabrys* ¶ 127.)

M&T Bank correctly states that "[s]ection 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers." *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 172, 991 N.E.2d 190 (2013).  Plaintiffs do not, however, allege merely improper or illegal behavior by M&T Bank.  Rather, they allege conduct that tends to deceive consumers, as the bank's misrepresentations are directed at the individuals who borrow money in order to finance automobile purchases.  In addition, Plaintiffs allege that this deceptive conduct is M&T Bank's regular way of conducting business and, indeed, occurred in all three of the cases here.  Accordingly, Plaintiffs plausibly allege consumer-oriented deceptive actions on behalf of M&T Bank that violate § 349.

## C.    NY Usury Law

M&T Bank argues that the RICs governing Plaintiffs' loans comply with the NY usury cap because the interest rates are all listed as below 16%.  An interest charge disguised as a fee, however, still counts toward the interest cap.

It is well established that, although a loan may boast a legal interest rate of 16% on its face, "when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate." *Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339-40 (2013); *see, e.g.*, *In re The Colad Grp., Inc.*, 324 B.R. 208, 220-21 (W.D.N.Y. Bankr. 2005) ("Consequently, the various loan fees do not represent any reimbursement of reasonable costs and expenses. With no evidence of a contrary purpose or effect, the court can only view the fees as the collection of additional interest." (citing N.Y. Gen. Oblig. L. § 5–501(2))); *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 127, 589 N.Y.S.2d 396 (1992) (acknowledging that fees can sometimes be "a pretext for higher interest"). That court continued, "[t]he question of the purpose of the fee payment therefore presents an issue of fact." *Hillair*, 963 F. Supp. 2d at 339-40.

The same reasoning applies to all the hidden finance charges, including the difference between the orally agreed-upon sales price and the sales price listed on the retail installment contract, as the former "is critical to calculating the initial loan amount and thus the interest rate." *Id.* at 340.

Here, the RICs contain hidden finance charges in the form of grossly inflated sales prices and add-on products that were not desired, agreed-to, or even purchased.  For Mr. Tuhin, these additional interest charges amount to over $13,000.  (PAC: *Tuhin* ¶ 34.)  And for Ms.

Chowdhury and Mr. Gabrys, these additional charges amount to approximately $10,000 and $9,000, respectively. (PAC: *Chowdhury* ¶ 227; *Gabrys* ¶ 220.) Whether these charges count toward the interest rate, bringing the innocuous rates listed on the face of the contracts well over the legal limit, is a question of fact to be resolved at trial, not on a motion to dismiss.

### D. TILA

M&T Bank seeks the dismissal of Mr. Tuhin's TILA claims on the grounds that it is not a creditor under the statute.[7] (M&T Bank MOL, at 16-18).

TILA defines creditor, in relevant part, as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(g). Moreover, the Federal Reserve Board's Official Staff Commentary to Regulation Z provides that "[i]f an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person." 12 C.F.R. pt. 226, supp. I at 300 (2000); *Vincent v. The Money Store*, 736 F.3d 88, 106 (2d Cir. 2013).

Mr. Tuhin agrees that M&T Bank is not directly liable as a creditor under TILA. He alleges, however, that M&T Bank bears assignee liability. TILA limits liability of assignees to instances where the violation "is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a); *Money Store*, 736 F.3d at 107. The Court may consider the "'other documents involved'" in the transaction. *See Money Store*, 736 F.3d at 107-08 (citing S. Rep. No. 96–73, at 18 (1979), 1980 U.S.C.C.A.N. 280, 296); *Perry v. Household Retail Servs., Inc.*, 953 F. Supp. 1370, 1375-76 (M.D. Ala. 1996) on reconsideration sub nom. *Canaday v. Household Retail*

---

[7] M&T Bank argues that Mr. Tuhin cannot seek both rescission of the loan and damages. (M&T Bank MOL, at 20). To clarify, Mr. Tuhin asserts these theories in the alternative: he seeks rescission under state common law, as well as damages under TILA, RICO, MMWA, and GBL.

*Servs., Inc.*, 119 F. Supp. 2d 1258 (M.D. Ala. 2000) *aff'd sub nom. Perry v. Household Retail*, 268 F.3d 1067 (11th Cir. 2001) (considering the assignee's knowledge of "all the facts and circumstances of its credit policy" in determining whether the TILA violation was "apparent on the face of the agreement").

Here, the face of Mr. Tuhin's RIC lists the sales price as $24,819.00—far exceeding the market price, advertised price, and reasonable value of the vehicle (PAC: *Tuhin* ¶¶ 16, 49.) The reasonable value of the collateral is an essential factor in any responsible extension of secured credit. (PAC: *Tuhin* ¶ 49). Accordingly, the inflated sales price of the collateral on the face of the RIC is readily apparent and reliance on such an inaccurate disclosure makes M&T Bank liable under TILA as an assignee.

Even if the Court finds that M&T Bank bears no assignee liability for the TILA violations alleged, those unopposed claims would proceed against NYMG.[8]

### E.      Magnuson-Moss Warranty Act

M&T Bank argues that Mr. Tuhin's MMWA claims should be dismissed because: (1) he has inadequately alleged that the breach of warranty prevented him from transporting himself "in a reasonably safe manner"; and (2) because he fails to meet the $50,000 amount-in-controversy threshold for conferring jurisdiction under 15 U.S.C. § 2310(d)(3)(B). (M&T Bank, at 23-25

---

[8] Mr. Tuhin alleges additional TILA violations by NYMG for which M&T Bank would not have assignee liability. These violations include the inaccurate listing of the down payment and hidden finance charges, including the $3,000 "service contract" and $90 "VSI," which render inaccurate the financial disclosures provided. NYMG also allegedly violated TILA by failing to "make the disclosures required . . . clearly and conspicuously in writing, in a form the consumer may keep," as required by 12 C.F.R. 226.17(a)(1), by physically preventing him from having possession of the RIC prior to signing.

(quoting *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 541 (E.D.N.Y. 2006)).)

First, Mr. Tuhin alleges that the vehicle "violently shakes when driven and makes a loud vibration noise that gets increasingly worse as it is driven." (PAC: *Tuhin* ¶ 52). This allegation meets the standard cited—it is plausible that a reasonable person would not find such driving conditions safe.

Second, as noted, § 2310(d)(3)(B) is a jurisdictional statute. It provides that "[n]o claim shall be cognizable in a suit brought [in federal district court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." It is analogous to the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332, and only applies in cases where no other federal question has been asserted. *See generally Enobakhare v. Carpoint, LLC*, No. 08-CV-4798-ARR, 2011 WL 703920 (E.D.N.Y. Jan. 10, 2011), report and recommendation adopted, 2011 WL 704902 (Feb. 16, 2011). Punitive damages "may be included in determining whether the jurisdictional amount is satisfied." *Id.*

Here, subject matter jurisdiction is already conferred by the federal question posed at a minimum under TILA against NYMG, not by the MMWA or diversity of citizenship. As a result, § 2310(d)(3)(B)'s amount in controversy is wholly irrelevant. In any event, Mr. Tuhin satisfies MMWA's amount in controversy because all claims to be determined, including punitive damages, exceed $50,000.

Accordingly, Mr. Tuhin plausibly states a claim for relief under the MMWA.

**III.    Dealership Defendants' Arguments Against All Plaintiffs Except Mr. Tuhin**

**A.    RICO**

The Dealership Defendants also suggest that the RICO claims asserted against them fail to state plausible claims for relief under *Iqbal/Twombly*. Specifically, the Dealerships assert that Plaintiffs[9] have failed to allege predicate acts of fraud, the existence of a RICO enterprise, and a "pattern of racketeering activity" with the requisite continuity. The Dealerships Defendants are wrong on all counts.

**1.    Plaintiffs Adequately Allege Predicate Acts of Fraud**

As stated in Plaintiffs' motion-in-chief, wire and mail fraud under 18 U.S.C. §§ 1341 and 1343 constitute predicate acts under RICO. The elements of mail and wire fraud are:

> (1) the existence of a scheme to defraud,
> (2) the defendant's knowing participation in the scheme, and
> (3) the use of wire[ or] mail. . . communications in interstate commerce in furtherance of the scheme.

*Chanayil v. Gulati*, 169 F.3d 168, 170-171 (2d Cir. 1999); *see* 18 U.S.C. §§ 1341, 1343.

The Dealership Defendants assert the false premise that Plaintiffs attempt to transmogrify "garden variety" claims for breach of contract and common law tort claims into RICO claims by merely alleging the use of wire and mail in interstate commerce. (Dealership Defendants, Memorandum of Law in Support of Motion to Dismiss, at 6, 7.) This premise ignores that Plaintiffs have alleged that the Dealerships hired an indicted felon who was convicted on charges related to fraudulent auto financing to manage their auto finance process and that in the course of doing so, he – with the assistance of other employees – continued to fraudulently induce people

---

[9] As explained in the Preliminary Statement, the Dealerships Defendants do not oppose Mr. Tuhin's motion to amend or move to dismiss any of the claims he has asserted. Accordingly, for purposes of Section III only, the term "Plaintiffs" refer to all Plaintiffs in the related cases except for Mr. Tuhin.

into higher loan obligations, steal money from consumers, forge documents, and steal identities. (*See e.g.*, PAC: *Dong* ¶¶12-21.)  That is, as described above in response to M&T Bank's similar erroneous assertion, the numerous fraudulent transactions set up by the Dealership Defendants are precisely the kind of criminal and fraudulent scheme that RICO was designed to prevent and are not mere "garden variety" breaches of contract.

Moreover, the Dealerships' reliance on *Boritzer v. Calloway* and *Patrizzi v. Bourne in Time, Inc.* is entirely misplaced.  In both of those cases, the plaintiffs were sophisticated or business-savvy individuals who had either engaged in arms-length business deals with the defendants or had nothing more than common commercial disputes and thus could not identify any criminal activity or wire fraud to justify the application of RICO.  *See Boritzer*, No. 10 Civ. 6264(JPO), 2013 WL 311013, 2013 U.S. Dist. LEXIS 11119 (S.D.N.Y. Jan. 24, 2013) (plaintiffs were investors in a restaurant venture who sued their business partners after they determined that the money they invested was not used for the intended purposes in operating the restaurant); *Patrizzi*, No. 11 Civ. 2386(PAE), 2012 WL 4833344, 2012 U.S. Dist. LEXIS 146861 (S.D.N.Y. Oct. 11, 2012) (plaintiff was a world-famous clock maker based in Monaco who discovered that another company was using his company name in their internet domain names, which the court correctly characterized as "garden variety" trademark infringement claims).  These cases are merely examples of the type of "business-deal-gone-sour" RICO claims that are justifiably denied by Courts in this and other Circuits.

Plaintiffs, here, however, as alleged, have all been victimized by an actually criminal scheme directed at unsophisticated consumers, which employed a con artist specializing in this particular type of fraud as a participant, and has resulted in theft of money, theft of identity, and higher than legally permissible loan obligations for the financial benefit of all Defendants.

Accordingly, the numerous and extensively detailed uses of the wires in interstate commerce in furtherance of this scheme, as alleged, are violations of 18 U.S.C. § 1343 and therefore constitute a violation of RICO § 1962(c).

**2.     Plaintiffs Adequately Allege a Pattern of Racketeering Activity With Requisite Continuity**

The Dealership Defendants assert a nearly identical argument to that of M&T Bank to erroneously suggest that Plaintiffs have not pled a pattern of racketeering activity with the requisite continuity under RICO.

For the same reasons stated above in response to M&T Bank's motion, (*supra*, at II.A), Plaintiffs have alleged a pattern of racketeering activity.  Plaintiffs will not, however, repeat the arguments and cases already cited.  Suffice it to say, as the parties are still in the midst of discovery, the questions regarding the amount of time that the Dealerships have been in operation, for purposes of continuity, has yet to be determined.  Also, it is still unclear that the Dealerships or Mr. Eltouby have ceased operating.  Therefore, by having alleged that the Dealership Defendants have engaged in a long-term scheme to defraud consumers through theft, lies, and the use of the wires in furtherance of that scheme, Plaintiffs have adequately alleged both open and closed-ended continuity.  And it is plausible for the Court to infer that the Dealership Defendants operated this scheme for more than two years and that the actions complained of pose a threat of continued criminal activity.

**3.     Plaintiffs Adequately Allege a RICO Enterprise**

Under RICO, "[e]nterprise is defined to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Bankers Trust co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984); 18 U.S.C. 1961(4).  The RICO requirement of an enterprise, is "most easily satisfied when the

enterprise is a formal legal entity." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173(2d Cir. 2004).

Regarding the RICO claim asserted directly against the individual Defendants, the Proposed Amended Complaints allege that Mamdoh Eltouby, Nada Eltouby, Julio Estrada, and other as-yet-unidentified individuals, participated in the scheme to defraud consumers as part of an enterprise the consists of New York Motor Group and Planet Motor Cars. The complaints further allege that Mamdoh Eltouby has an ownership interest in both entities and that the other individual defendants are employees of both entities. (*See, e.g.*, PAC: *Freire* ¶¶ 173-174.)

Plaintiffs have also clearly alleged that they responded to advertisements for vehicle sales at New York Motor Group, transacted with the individual Defendants at New York Motor Group, but were given transaction documents that identify alternately New York Motor Group and Planet Motor Cars as the seller of the vehicles. (*See, e.g.*, PAC: *Alkhatib* ¶¶ 34-35, 76.) Accordingly, it is plausible to infer that New York Motor Group and Planet Motor Cars form an enterprise that employs the individual defendants. *See Huber*, 603 F.2d at 393-94 (finding that a group of interrelated companies owned by a participant in a scheme to defraud formed an enterprise under RICO). Moreover, and in the alternative, it is plausible to infer that either New York Motor Group or Planet Motor Cars employs the individual defendants, and that each entity on its own is a RICO enterprise.

Dealership Defendants' assertion that the Plaintiffs have failed to allege facts to establish that the enterprise exists separate and apart from alleged illegal activities is entirely misplaced. Here, the Enterprise is either New York Motor Group or Planet Motor Cars, or in the alternative the enterprise is the joint relationship to sell cars that exists between New York Motor Group and Planet Motor Cars. The predicate acts committed by the individual Defendants obviously exist

separate and apart from the legal entities of New York Motor Group and Planet Motor Cars or separate and apart from the relationship between those two entities. That is, New York Motor Group and Planet Motor Cars would exist, in and of themselves, as legal entities even if the pattern of racketeering activity did not exist. *See United States v. Turkette*, 453 U.S. 576, 583 (1981) (requiring that the "enterprise" exist separate and apart from the pattern of activity in which it engages).

Furthermore, the "distinction" requirement – *i.e.*, distinguishing the enterprise from the defendant-participants in the enterprise – cited by Defendants here, would only apply if the Dealerships were being named as RICO participants. *See, e.g.*, *Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985). But in the RICO counts against Mamdoh Eltouby, Nada Eltouby and Julio Estrada, the Dealerships are not named as participants. Rather, that particular RICO claim is asserted, in the alternative, against only the individuals, who either had an ownership interest in the legal entities or were employed by the legal entities. Accordingly, the Eltoubys and Mr. Estrada are obviously distinct from the enterprise.

To the extent the Court finds that the Proposed Amended Pleadings do not adequately allege an enterprise formed jointly by New York Motor Group and Planet Motor Cars, Plaintiffs seek leave to further Amend to plead a RICO count against the individual defendants as part of an enterprise comprised solely by New York Motor Group and an alternate count against the individual defendants as part of an enterprise comprised solely by Planet Motors Cars.

Finally, despite Defendants' assertions to the contrary, the Amended Pleadings adequately allege the role of each individual Defendant in the enterprise: Mamdoh Eltouby is the owner of the enterprise overseeing operations and hiring employees; Julio Estrada is the finance manager who negotiates and arranges loan obligations and interacts with financial institutions to

sell the obligations; and Nada Eltouby assists Mr. Estrada.  (*See e.g.*, PAC: *Gabrys* ¶¶ 14-15,

179.)  Accordingly, Plaintiffs meet any requirement to identify the structure of the enterprise and

the role each participant played.

> **B.     The Eltoubys' Liability**

> > **1.     Plaintiffs Do Not Seek Personal Liability under TILA, MVRISA, NYGBL or for Usury, Fraud, or Rescission**

Dealership Defendants mistakenly read (the non-Tuhin) Plaintiffs' Proposed Amended

Complaints to assert claims for personal liability against Mamdoh Eltouby and Nada Eltouby

under TILA, New York Motor Vehicle Retail Installment Sales Act, NY Usury Law, NYGBL §§

349 and 350, Fraud, Rescission and Breach of Contract.  It was never these Plaintiffs' intention

to seek personal liability on those counts, and if the Court feels that should be clarified, these

Plaintiffs seek leave to further amend to more specifically indicate that those claims are only

being asserted against the business entities.  In any event, the Court should find as moot the

portions of the Dealership Defendants' motion that seeks dismissal of claims for personal

liability under these counts.

> > **2.     Plaintiffs Adequately Allege a Claim for Negligent Retention and Hiring Against Mamdoh Eltouby**

Defendants are correct, that Plaintiffs seek to hold Mamdoh Eltouby personally liable for

the tort of negligent retention and hiring relative to the hiring and supervision of Julio Estrada

and others.  Mamdoh Eltouby may very well have been acting in his role as an officer when

hiring and supervising Estrada, however, acting "solely in the capacity as an officer of [a]

corporation is not sufficient ground for dismissal.  Rather, a corporate officer who participates in

the commission of a tort may be held individually liable, regardless of whether the officer acted

on behalf of the corporation in the course of official duties and regardless of whether the

corporate veil is pierced." *Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 558 (App. Div. 1st Dept. 2009).

Here, Plaintiffs allege that Eltouby exercised direct supervision and control over Estrada and other employees and that he knew or should have known of Mr. Estrada's and others' propensity to commit the unlawful acts described in the Complaints. (PAC: *Freire* ¶¶ 304-305.) Moreover, Plaintiffs specifically assert that Mr. Eltouby does not properly train or supervise his employees and/or agents and that he in fact trains them to violate state and federal law. (*See e.g.*, PAC: *Freire* ¶ 306-307.) And under New York's "commission of a tort" doctrine, an officer of a company will be held personally liable for his own tortious conduct. *Peguero*, 58 A.D. at 559.

Accordingly, as Plaintiffs have adequately alleged Mr. Eltouby's direct tortious conduct in negligently hiring and improperly training and supervising his employees, Plaintiffs claims for his personal liability on this count cannot be dismissed on the pleadings. *See Stone v. Rivera*, 2014 NY Misc. LEXIS 1990, *6-7 (Sup. Ct. N.Y. Cty., Apr. 24, 2014) (finding claims for owner's personal liability related to negligent hiring and retention not ripe for summary judgment where defendant-owner's deposition had not yet occurred.)

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion to amend should be granted and the cross-motions to dismiss should be denied in their entirety.

/s/ Carolyn E. Coffey
Carolyn E. Coffey (CC6741), and
Ariana Lindermayer (AL0625), of counsel to
Jeanette Zelhof, Esq.
MFY LEGAL SERVICES, INC.
*Attorneys for Tuhin*
299 Broadway, 4th Floor
New York, NY 10007
Tel: (212) 417-3701
Tel: (212) 417-3742

Fax: (212) 417-3890
Email: ccoffey@mfy.org
Email: alindermayer@mfy.org

Ahmad Keshavarz (AK9602)
*Attorney for Tuhin*
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809 (toll-free) Email:
ahmad@NewYorkConsumerAttorney.com

/s/ Peter T. Lane
Peter T. Lane, Esq.
SCHLANGER & SCHLANGER, LLP
*Attorneys for all related-Plaintiffs except Tuhin*
9 East 40th Street, Suite 1300
New York, NY 10016
Tel: 914-946-1981
peter.lane@schlangerlegal.com