MFY LEGAL SERVICES INCORPORATED

299 Broadway
New York, NY 10007
Phone: 212-417-3700
Fax: 212-417-3891
www.mfy.org

Robert L. Harwood
*Board Chair*

Jeanette Zelhof
*Executive Director*

Elise Brown
*Deputy Director &
Director of Litigation
for Economic Justice*

Kevin Cremin
*Director of Litigation
for Disability &
Aging Rights*

Montel Cherry
Carolyn E. Coffey
Mallory Curran
Maia Goodell
Barbara Graves-Poller
Michael Grinthal
Elizabeth M. Lynch
Christopher Schwartz
*Supervising Attorneys*

*50th Anniversary: Mobilizing for Justice*

By Electronic Case Filing

December 19, 2014

Hon. Steven M. Gold
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Alkhatib v. NY Motor Group, et al.*, Case No. 13-CV-2337;
      *Gabrys v. NY Motor Group, et al.*, Case No. 13-CV-7290;
      *Freire v. NY Motor Group, et al.*, Case No. 13-CV-7291;
      *Tuhin v. NY Motor Group, et al.*, Case No 13-CV-5643;
      *Dong v. NY Motor Group, et al.*, Case No 14-CV-2980;
      *Chowdhury v. NY Motor Group, et al.*, Case No. 14-CV-2981.

Dear Judge Gold:

I, along with co-counsel for Plaintiff Shahadat Tuhin, and in consultation with Schlanger & Schlanger, counsel for all other related-plaintiffs, write on behalf of all Plaintiffs in the above-referenced related lawsuits brought under *inter alia* the Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").  As Your Honor requested at the November 25, 2014 oral argument and status conference, Plaintiffs provide further allegations that Defendant Nada Eltouby was an active, knowing participant in the RICO conspiracy and that the RICO enterprises were adequately continuous.[1]  Plaintiffs also explain why the Court should consolidate the related cases for trial.

**I. Nada Eltouby Knowingly Participated in the RICO Enterprise**

Plaintiffs have already pleaded sufficient allegations to plausibly conclude that Ms. Eltouby knowingly participated in the RICO enterprise comprised of co-Defendants Mamdoh Eltouby and Julio Estrada.

---

[1] A second Proposed Amended Complaint in *Tuhin* reflecting these further allegations is attached as Exhibit A.  These further allegations are common to all related-Complaints and all Plaintiffs intend to add these identical additional allegations to their proposed amended complaints in the identical RICO sections.  For the sake of simplicity, Tuhin's related plaintiffs are not attaching further amended complaints at this time; but to be clear, all plaintiffs intend to add the newly detailed allegations outlined herein and shown in Exhibit A in their complaints, should the Court allow them in addition to all other previously stated allegations.

1

For example, Mr. Tuhin alleges that Ms. Eltouby worked closely with Mr. Estrada (*Tuhin*, PAC ¶ 41)[2], and that when the sales manager attempted (or feigned) to cancel Mr. Tuhin's loan, the two people he said he was calling with apparent authority to do so were Ms. Eltouby and Mr. Estrada (*Tuhin*, PAC ¶ 46). Mr. Tuhin also alleges that, when he tried to return his car to the dealership, Ms. Eltouby, alongside Mr. Estrada, told him that the interest rate would drop significantly if he made the first six payments on time. (*Tuhin*, PAC ¶ 47).

Similarly, related-Plaintiff Nasrin Chowdhury's son, Shehad Kazi, spoke with Ms. Eltouby several times in Summer and Fall 2013 about his family's dispute with the NYMG. In addition to assuring him that NYMG would take care of the problems, he witnessed Ms. Eltouby prepare a money order, after police intervention, to reimburse him for the $4480.81 that Mr. Estrada had previously fraudulently obtained from him. (*Chowdhury*, PAC ¶¶ 101-102, 125).

In addition, on October 7, 2013, related-Plaintiff Simon Gabrys discussed the fraudulently promised refinancing offer with Ms. Eltouby and Mr. Estrada, and provided them documents that Mr. Estrada had requested in order to ostensibly process the refinancing. Ms. Eltouby took the documents from Mr. Gabrys, made copies, and, at Mr. Estrada's request, made it appear that she was faxing the documents to, on information and belief, a non-existent person named "Rebecca" who was purportedly Mr. Estrada's "director" with authority to approve the refinancing. (*Gabrys*, PAC ¶ 110-118).

Furthermore, Plaintiffs can allege additional facts, set forth in the attached second proposed amended complaint, to support Ms. Eltouby's active, knowing and integral participation in the enterprise. According to the victims, Ms. Eltouby was the face of Defendant New York Motor Group, LLC ("NYMG") and served as manager with authority to act on behalf of NYMG. Indeed, given how integral she was to the dealership's daily activities, it is highly implausible that she did not know about and participate in its fraudulent operation.

For example, Mr. Tuhin elaborates that when he first went to the dealership, Ms. Eltouby assured him that he was getting a quality car for a good deal—assertions that an employee who merely does clerical work would have no basis for making. (*See* Exhibit A, at ¶ 19.) Over the span of four days, as Mr. Tuhin returned to finalize the financing, Ms. Eltouby was always present and circulating among the sales people and customers in a manner that implied far more authority than a receptionist would have. (*See* Exhibit A, at ¶ 34.) On the day he attempted to return the vehicle, Ms. Eltouby specifically vouched for Mr. Estrada, to whom she referred by his alias, "John": she told Mr. Tuhin that he could trust and should listen to Mr. Estrada, and repeated Mr. Estrada's misrepresentation that as long as he made six timely payments, he would automatically receive the lower interest rate. (*See* Exhibit A, at ¶ 48.) Mr. Tuhin also observed Ms. Eltouby act with authority on behalf of the dealership: she was handed his cash down payment by the salesperson and signed the receipt, and she spoke with the police officer who responded to the protest that victims organized. (*See* Exhibit A, at ¶¶ 18, 58.) Based on his observations of how the sales people interacted with her, he believed at the time that she was the owner or manager of the dealership. (*See* Exhibit A, at ¶ 34.)

---

[2] All references herein to "PAC" are references to the Proposed Amended Complaints that all Plaintiffs attached to the instant motion on 8-21-14 (*Alkhatib* ECF Doc. No. 73, Exhibits 1-5 and *Tuhin* ECF Doc. No. 55, Exhibit 1). Otherwise, the newly stated allegations referred to in this letter are contained, for all parties' and the Court's review in the attached Exhibit A, showing in tracked changes.

Ms. Eltouby's authority to act on behalf of the dealership was not limited to her interactions with Mr. Tuhin. She also signed, on behalf of NYMG, a Notice of Hearing for unlicensed activity from the NYC Department of Consumer Affairs ("DCA"); the receipt for a cash deposit of another victim, Nube Fernandez; the NYS Department of Motor Vehicles Vehicle Registration/Title Application for Ms. Fernandez (as an "Authorized Representative"); and the Odometer and Damage Disclosure Statement for Ms. Fernandez. Ms. Eltouby's knowing participation in the operation of the enterprise can plausibly be inferred from these allegations.

Moreover, a plaintiff must be allowed to engage in discovery to obtain sufficient factual information about the inner workings of a RICO enterprise, particularly whether a defendant participated in the operation and management. *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 671 (S.D.N.Y. 2000); *see AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-042934-ERK, 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005) ("Thus, where the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question."). Accordingly, even if the Court concludes that the numerous facts articulated by the Plaintiffs do not adequately connect Ms. Eltouby to the rampant fraud at the dealerships, the appropriate remedy would be to wait until the close of discovery before deciding whether to dismiss her as a defendant.

## II. The RICO Enterprise was Continuous

Plaintiffs have already pleaded sufficient allegations to conclude that the RICO enterprises were continuous, as well. At the oral argument, Defendants asserted that Plaintiffs must prove both closed- and open-ended continuity. Defendants disputed closed-ended continuity on the grounds that the alleged scheme did not last more than two years. In addition, regarding open-ended continuity, Defendant M&T Bank argued that there is no ongoing threat of criminal activity because it stopped doing business with NYMG and Planet in February 2014 (after they closed), and the dealership Defendants argued that the threat is not ongoing because Mr. Estrada, the sole perpetrator of the fraud, has been arrested.

To start, Plaintiffs need only prove closed- *or* open-ended continuity, not both. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir, 1999). Nevertheless, Plaintiffs' allegations satisfy both elements.

Closed-ended continuity consists of a "series of related predicates extending over a substantial period of time." *Id.* This element is deemed satisfied when the predicate acts occur over a period of two years, although there is "no[] . . . bright-line requirement." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Here, Plaintiffs allege acts of wire and mail fraud from 2012 to 2014 and impacting nine victims. (*Tuhin*, PAC ¶ 138(a)-(i)). Particularly as the facts, including the length of time the fraud was conducted, have not been fully developed, and the evidence of other victims (besides the 11 already identified by Plaintiffs) is in the Defendants' possession, Plaintiffs have plausibly pleaded closed-ended continuity.

Open-ended continuity requires that the predicate acts be the regular way of operating the business *or* that their nature implies a threat of continued criminal activity. *Cofacredit*, 187 F.3d at 242. The threat of future conduct may be present even if the predicate acts have ceased,

because it "is evaluated as it would appear at the time the conduct was committed." *City of New York v. LaserShip, Inc.*, No. 13 Civ. 7535 (GBD), 2014 WL 3610927 (S.D.N.Y. Jul. 10, 2014); *see also Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 370 (E.D.N.Y. 2012) ("It is sufficient that a threat of continuity inhered in the alleged racketeering activity, even if that activity lasted only a brief time and is indisputably over." (citing *H.J. Inc. v. Northwestern Bell Tell Co.*, 492 U.S. 229, 241 (1988)).

In fact, this Court has long held that the termination of criminal activity, even after only a few weeks, does not defeat open-ended continuity:

> That racketeering activity lasts in actuality only a few weeks and then is ceased because the participants are found out would not necessarily mean that at the time the activity took place, it had not threatened future criminal activity. Indeed, even if the racketeering activity was voluntarily stopped after a few weeks or months, it might still have had threatened future criminal activity depending on why defendants decided to discontinue the acts.

*Morrow v. Black*, 742 F. Supp. 1199, 1207 (E.D.N.Y. 1990); *see also United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) ("All racketeering activity must necessarily come to an end sometime. The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict."); *Friedman v. Hartmann*, No. 91 CIV. 1523 (PKL), 1994 WL 376058, at *1 (S.D.N.Y. July 15, 1994) ("The mere fact that RICO defendants terminate their conduct does not prevent the Court from finding open-ended continuity. Indeed, even if the racketeering activity was voluntarily stopped after a few weeks or months, it might still have ... threatened future criminal activity depending on why defendants decided to discontinue the acts." (internal citations and quotation omitted)); *Breslin Realty Associates v. Park Investments, Ltd.*, No. 91 CV 1614 (TCP), 1991 WL 340576, at *3 (E.D.N.Y. Dec. 23, 1991) (finding open-ended continuity where defendant's unlawful practice would have continued into the future if the plaintiffs had not discovered it); *Dreieck Finanz AG v. Sun*, No. 89 Civ. 4347, 1990 WL 11537, at *9 (S.D.N.Y. Feb. 9, 1990) (finding open-ended continuity where scheme was ended by plaintiff's fortuitous discovery of scheme).

Thus, to find open-ended continuity, the pertinent question is whether the alleged racketeering *would have continued* absent its discovery. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 CIV. 6876 (LMM), 1998 WL 42575, at *5 (S.D.N.Y. Feb. 4, 1998).[3]

Again, although they need only satisfy either element for open-ended continuity, the Proposed Amended Complaints establish that the predicates acts engaged in by NYMG, Defendant Planet Motor Cars, Inc. ("Planet Motor"), and M&T Bank both were their regular way of doing business and carried a threat of continued criminal activity. The consistency of NYMG's

---

[3] Furthermore, to the extent M&T Bank argues that it withdrew from the RICO conspiracy, it must demonstrate that it "took affirmative acts inconsistent with its objects; mere cessation of activity is not enough. Unless and until a defendant makes such a showing, [its] participation in the conspiracy is presumed to continue until the last overt act by any of the conspirators." *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-2609 NG, 2013 WL 1911301, at *7 (E.D.N.Y. Jan. 3, 2013) (internal citation, quotation and alteration omitted), supplemented, No. 04-CV-2609 NG, 2013 WL 1911325 (E.D.N.Y. Jan. 18, 2013) report and recommendation adopted as modified on other grounds, 968 F. Supp. 2d 480 (E.D.N.Y. 2013).

4

misrepresentations to the six related Plaintiffs and nonparty witnesses, as well as the misinformation provided by M&T Bank, plausibly implies that the predicate acts were the regular way of doing business.

In addition, the enterprises alleged in the Proposed Amended Complaints threatened ongoing criminal activity. When the predicate acts occurred, the dealerships intended to make similar misrepresentations to any new consumers who sought to purchase a vehicle. Likewise, accepting the allegations as true, M&T Bank intended to continue doing business with NYMG despite consistent reports of fraud and lying to consumers about their legal rights. M&T Bank's involvement in the enterprise was not an isolated incident; it was ongoing and would have continued had Plaintiffs, and others, not exposed the fraud, causing NYMG and Planet Motors to close.

Indeed, the unlawful activity continues today. As alleged in the Proposed Amended Complaint, Mr. Eltouby closed NYMG and resumed operations under the existing dealership Hillside Motors, LLC. (e.g. *Tuhin*, PAC ¶ 87; *Chowdhury* PAC ¶ 180). In addition, M&T Bank is still collecting and reporting these fraudulent loans, even with overwhelming evidence that the finance manager who arranged them was engaged in criminal activity. (*Tuhin*, PAC ¶ 72). Regardless of any independent liability M&T Bank may dispute, by continuing to enforce these loans as if they were legally valid, M&T Bank is ratifying and perpetuating criminal activity.

Furthermore, Plaintiffs can provide additional facts that further support the claims of closed- and open-ended continuity. In particular, Plaintiffs have confirmed that Mr. Eltouby is the President of Hillside Motors, which is operating at 161-10 Hillside Avenue, Jamaica, NY 11432, an address formerly associated with Planet Motor. (*See* Exhibit A, at ¶ 127.) Plaintiffs have also discovered that Mr. Eltouby, as President of Hillside, entered in to a consent order with DCA in June 2014 agreeing to pay restitution to a consumer, Gaganmeet Bains, who alleged, *inter alia*, to have had unwanted warranties and other products forced on him in order to inflate the price of the vehicle purchase and his ultimate loan obligation. (*See* Exhibit A, at ¶¶ 34, 138(k).) The facts of this DCA administrative action are strikingly similar to the facts of all alleged claims in the related cases.

Moreover, beginning in Fall 2013, other consumers who had similar disputes with NYMG were directed by Mr. Eltouby or others at that dealership to bring their complaints to employees of Hillside Motors. For example, after complaining to Mr. Eltouby, Ms. Eltouby, and Mr. Estrada over several months in Summer and Fall 2013, another victim, Robert Muniz, arrived at NYMG in or about November 2013 to find that Mr. Estrada was no longer available. Mr. Eltouby told him to go to Hillside Motors and speak with "Shawn" who would take care of the purported refinancing offer the dealership kept promising. (*See* Exhibit A, at ¶ 138(a), (j).)

Furthermore, another victim, Tareque Ahmed, visited NYMG in June 2013 to complain about refinancing and loan satisfaction the dealership had fraudulently promised. Mr. Estrada told him to make a cash payment in order to purportedly satisfy the loan obligation to Santander Consumer USA, Inc. Mr. Estrada provided Mr. Ahmed with a receipt that listed the name and address of Hillside Motors. (*See* Exhibit A, at ¶ 138(l).)

Combined with all other facts, this information shows, not only that the RICO enterprises would have continued if not interrupted by these lawsuits and the arrest of Mr. Estrada, but that they in fact continue today under the auspices of Hillside Motors, separate and apart from any collaboration with Mr. Estrada. Indeed, Hillside Motors has been part of the enterprise since at least 2013, and Mr. Eltouby and his employees used all three businesses interchangeably to achieve the goals of the enterprise.[4]

**III. The Related Cases Should Be Consolidated for Trial**

Federal Rule of Civil Procedure ("FRCP") 42 allows the Court to consolidate for trial actions that involve a common question of law or fact *sua sponte*. *Devlin v. Transportation Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). The Rule is "a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Id.* (internal citations and quotations omitted). The Court should weigh the "savings of expense and gains of efficiency" against any ensuing prejudice or other equitable considerations." *Id.* Plaintiffs argue that the Court should exercise this discretion to consolidate the related cases for trial. Doing so would promote judicial efficiency without prejudicing Defendants. For this same reason, Plaintiffs respectfully request that the Court read the allegations in each related-complaint as if they are the allegations of all other related-Plaintiffs.

If six separate trials proceed, the parties will all have to testify at each. Even if the cases are not consolidated, all related Plaintiffs would be entitled to testify in each other's trials as fact witnesses. Under Federal Rule of Evidence 404(b), evidence of a crime, wrong, or other act may be admissible for a purpose other than propensity, including intent, plan, knowledge or absence of mistake. Accordingly, for example, Mr. Tuhin's testimony that NYMG defrauded him by lying about his right to automatically refinance his loan, and that Mr. Eltouby and M&T Bank ignored his complaints of fraud, are admissible in Ms. Chowdhury's case to prove NYMG's plan to defraud consumers and M&T Bank and Mr. Eltouby's knowledge of this plan. Because all Plaintiffs could be called as witnesses in each other's cases anyway, judicial resources will be conserved by consolidating their cases into one trial, so that each witness will only have to testify once, as opposed to six times. Similarly, because all Plaintiffs will testify in each other's cases anyway, Defendants will not be unduly prejudiced by hearing their cases together.

Respectfully submitted,

_____/s/_____
Ariana Lindermayer

cc:  All Counsel (via ECF)

---

[4] Whether M&T Bank continues to conduct business with Mr. Eltouby, through Hillside Motors, will be revealed in the discovery process. Plaintiffs are currently waiting for M&T Bank to comply with the Court's directive to produce all consumer complaints regarding NYMG and Planet Motor. Plaintiffs have also requested discovery from M&T Bank about any loans provided to and consumer complaints about Hillside Motors.